**Janet Brakeman APPLETON, Appellant,**

v.

**Noah Lynn APPLETON, Appellee.**

No. 14–00–00800–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 7, 2002.

John C. Pavlas, Shawn Russel Casey, Houston, for appellants.

Thomas R. Conner, Timothy F. Lee, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant Janet Brakeman Appleton appeals from a take-nothing summary judgment rendered in favor of her ex-husband,

appellee Noah Lynn Appleton. In three issues, Janet contends the trial court erred in granting Noah's motion for summary judgment and in awarding attorney's fees against her as sanctions under Texas Rule of Civil Procedure 13. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Janet and Noah were married for thirteen years. They divorced in February 1997. As part of their divorce, they filed an agreed property division.

At all relevant times, Noah was employed as president of Advantage Motors, Inc., a BMW dealership. In June 1993, Noah, with Janet's consent, entered into a Stock Purchase Agreement with BMW of North America, Inc. ("BMW"), for the purpose of acquiring BMW's stock in Advantage Motors, Inc. This agreement governed the rights and obligations between Noah and BMW in connection with Noah's stock ownership in and employment with Advantage Motors. Under the agreement, Noah eventually was to become the sole stockholder and operator of Advantage Motors, and the terms of the agreement required him to buy stock annually from BMW. The stock was valued at a certain percentage of the original stock value of the company. The agreement also provided that Noah, at his option, could buy additional shares of preferred stock from BMW at any time, which were to be over and above his minimum purchase obligation. Additionally, the agreement gave Noah bonus compensation if he should "expend at least fifty percent (50%) of the aggregate amount of all bonuses paid to him in a calendar year to purchase Shares of Preferred Stock from [BMW]."

When they divorced, Noah and Janet entered into an agreed final divorce decree. This agreed decree divided the parties' property and contained specific provisions addressing Noah's Stock Purchase Agreement with BMW. The decree awarded Noah, among other things, the entire 25% of the stock in Advantage Motors that Noah and Janet owned at the time, plus all past, present, and future rights and claims under the Stock Purchase Agreement. In May 1997, three months after the court entered the agreed divorce decree, Noah purchased 3,800 shares of stock in Advantage Motors, Inc., increasing his ownership from the 25% awarded to him in the agreed divorce decree to 44%. Two years later, in January 1999, Janet filed a petition for a partition of property, claiming that, when the court signed the agreed divorce decree, the parties' community interest amounted to more than the 25% Noah revealed during the divorce proceedings, and that she was entitled to a portion of Noah's post-divorce purchase of stock under the Stock Purchase Agreement. In July 1999, Noah filed a motion for summary judgment. Noah also sought sanctions under Texas Rule of Civil Procedure 13, asserting that Janet's pleadings were frivolous. In September 1999, the trial court granted a take-nothing summary judgment in favor of Noah without stating its reasoning. The trial court also awarded attorney's fees as Rule 13 sanctions against Janet. Janet now appeals the trial court's order granting Noah's motion for summary judgment and awarding him attorney's fees as Rule 13 sanctions.[1]

## II. ISSUES PRESENTED ON APPEAL

We must decide whether the additional 19% of stock Noah purchased after the

---

**1.** Janet also alleged several tort claims against Noah. Janet, however, has assigned no error regarding the trial court's disposition of these claims; consequently, these claims are not before this court. *See* TEX.R.APP. P. 33.1; *Prudential Ins. Co. v. J.R. Franclen, Inc.,* 710 S.W.2d 568, 569 (Tex.1986).

parties' divorce is subject to partition and whether the trial court erred in awarding attorney's fees as Rule 13 sanctions against Janet.

## III. SUMMARY JUDGMENT

In her first two issues, Janet contends the trial court erred in granting summary judgment because (1) the final divorce decree failed to partition property rights acquired during marriage pursuant to Noah's Stock Purchase Agreement with BMW and (2) a fact issue exists whether the language in the final divorce decree was ambiguous.

### A. Standard of Review

For a defendant, as movant, to prevail on a motion for summary judgment, he must either disprove at least one necessary element of the plaintiff's theory of recovery or plead and conclusively establish each essential element of an affirmative defense. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). A matter is conclusively established if reasonable minds cannot differ as to the conclusion to be drawn from the summary judgment proof. *Id.*

Once the movant establishes that he is entitled to summary judgment, the burden shifts to the nonmovant to show why summary judgment should be avoided. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989). In conducting our review, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *See Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Where, as here, the trial court does not specify the ground on which it relied in granting summary judgment, we may affirm the summary judgment if any of the theories advanced are meritorious. *Rog-*

*ers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

### B. Res Judicata

In her first issue, Janet argues the trial court erred in granting Noah's motion for summary judgement because the final agreed divorce decree failed to partition Noah's post-divorce rights to purchase stock under his stock agreement with BMW. In the alternative, in her second issue, Janet contends summary judgment was improper because a fact issue existed whether the language contained in the final divorce decree regarding the Stock Purchase Agreement was ambiguous. Noah counters that the agreed final divorce decree is unambiguous with respect to his rights and obligations under this agreement, and that summary judgment in his favor was proper. In his motion for summary judgment, Noah argued that, because the final divorce decree disposed of the parties' 25% interest and any rights to purchase additional stock in the future as community property, res judicata bars Janet's claim. We agree.

Res judicata precludes relitigation of claims that have been finally adjudicated or that arise out of the same subject matter and could have been raised and litigated in the prior action. *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 358 (Tex.1998). Res judicata applies to a final divorce decree to the same extent that it applies to any other final judgment. *Baxter v. Ruddle*, 794 S.W.2d 761, 763 (Tex.1990). If an appeal is not perfected, res judicata bars a subsequent collateral attack. *Id.* The elements of res judicata are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in

the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996).

█ At issue in this case is whether the parties' final divorce decree partitioned their rights and obligations to purchase stock under the Stock Purchase Agreement. The parties' rights under the Stock Purchase Agreement were before the court as community property at the time the court entered the divorce decree, and the court awarded these rights to Noah pursuant to the parties' consent decree.

█ Texas courts follow an established procedure for interpreting property divisions in divorce decrees. Community property not awarded or partitioned by a divorce decree is subject to later partition between the ex-spouses, who are considered joint tenants or tenants in common. *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex. 1970); *Harrell v. Harrell*, 692 S.W.2d 876 (Tex.1985). Res judicata does not apply to post-divorce partitions where the divorce decree has not disposed of an asset. *See Busby*, 457 S.W.2d at 554. In those situations, partition is an appropriate remedy. *Id.* However, res judicata does apply, and partition is not appropriate, if the final decree purports to divide the entire community estate and is unambiguous, and neither party files a direct appeal. *Acosta v. Acosta*, 836 S.W.2d 652, 654 (Tex.App.-El Paso 1992, writ denied). Because the divorce decree at issue is an agreement by the parties, contract principles control. *See McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex.1984) (holding that a martial property settlement agreement incorporated into a final divorce decree is governed by the law of contracts).

█ When construing a written contract, the court's primary concern is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *R & P Enterprises v. LaGuarta,*

*Gavrel & Kirk,* 596 S.W.2d 517, 518 (Tex. 1980). To ascertain the true intentions of the parties to the contract, "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all of the provisions* of the contract so that none will be rendered meaningless." *Buys v. Buys,* 924 S.W.2d 369, 372 (Tex.1996) (emphasis added); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Biaza v. Simon,* 879 S.W.2d 349, 356 (Tex.App.-Houston [14th Dist.] 1994, writ denied). When a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 861 (Tex.2000).

█ Ambiguity arises only if the application of established rules of construction leaves the agreement susceptible of more than one reasonable meaning. *DeWitt County Elec. Co-op. v. Parks,* 1 S.W.3d 96, 100 (Tex.1999). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole" in light of the circumstances present when the contract was made. *Coker,* 650 S.W.2d at 394. Just because the parties disagree about the proper construction of a contract does not mean that the contract is ambiguous. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994). Conflicting interpretations of a contract, and even unclear or uncertain language, do not necessarily mean a contract is ambiguous. *Id.* Courts should not strain to find an ambiguity in a contract if, in doing so, they defeat the probable intentions of the parties. *Licata v. Licata,* 11 S.W.3d 269, 277 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument is an issue for

the trier of fact to decide. *See Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1980).

Paragraph seven of the final divorce decree awarded Noah the following:

> An undivided 25 percent interest (representing 100 percent of the parties' interest) in Advantage Motors, Inc., a Texas Corporation, including but not limited to all capital stock, accounts receivables, cash on deposit, equipment, furniture, fixtures, machinery, equipment, lease agreements, inventory goods and supplies; all personal property used in connection with the operation of such business; *and any and all* rights and privileges, past, present or *future,* arising out of or in connection with the operation of such business, including but not limited to all rights, powers and claims under any contract, *stock purchase agreement,* employment agreement relating to BMW auto dealership franchise and Advantage BMW, unless express provision is made in this decree to the contrary.

(emphasis added). Noah contends the agreement in the final decree unambiguously granted him: (1) 25% interest in the stock and business assets of Advantage Motors; (2) all personal property used in connection with the business; and (3) all past, present, and *future* rights and privileges arising out of or connected to the operation of this business, including all rights and privileges conferred by the Stock Purchase Agreement. He argues that this paragraph, read in conjunction with the entire divorce decree, particularly paragraph four, shows that he acquired all *future* rights and privileges conferred by the Stock Purchase Agreement. Paragraph four of the decree awarded Noah:

> Any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, *employee stock option plan,* employee savings plan, accrued unpaid bonuses, other benefit program existing by reason of NOAH LYNN APPLETON'S past, present or *future* employment.

 Applying the rules of contract construction, we must consider paragraph seven along with paragraph four and the underlying circumstances to ascertain the true intentions of the parties. *See City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). Paragraph four gives Noah all rights, vested or otherwise, related to any employee stock option plan. Words in a contract are to be read according to their ordinary meaning. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). A stock option is the right to purchase a specific quantity of stock for a designated price for a specified period of time. *See* BLACK'S LAW DICTIONARY 1431 (7th ed.1999). In addition to his minimum purchase obligation, the Stock Purchase Agreement gave Noah, at his option, the right to purchase a specified quantity of stock in the corporation at a certain price. When the decree is plain and unambiguous, we must give effect to the literal meaning of its language. *Baxter,* 794 S.W.2d at 761. Paragraphs seven and four of the divorce decree unambiguously identify the community property Noah was awarded and that property included future rights to purchase stock under the Stock Purchase Agreement.

At the time of the divorce, the parties owned 25% of the stock of Advantage BMW and the intangible right to purchase additional stock in the future. Both the existing shares of stock in Noah's business and the right to buy additional stock in the future were community property. *See Bodin v. Bodin,* 955 S.W.2d 380 (Tex.App.-

San Antonio 1997, no pet.). The parties' agreed divorce decree expressly and unambiguously awarded this community property to Noah.

Janet's claim in this action was raised or could have been raised in her previous divorce action. Janet has not cited, and we have not found, any summary-judgment evidence that raises a genuine issue of material fact as to the affirmative defense of res judicata. As a matter of law, res judicata bars Janet's claims. Accordingly, the trial court properly granted Noah's motion for summary judgment. We overrule Janet's first and second issues.

## IV. RULE 13 SANCTIONS

In her third issue, Janet argues the trial court erred in finding her suit for post-divorce partition of property frivolous and in awarding sanctions under Texas Rule of Civil Procedure 13.

Whether to impose Rule 13 sanctions is within the trial court's sound discretion. *Mattly v. Spiegel, Inc.,* 19 S.W.3d 890, 895 (Tex.App.-Houston [14th Dist.] 2000, no pet.). We will not set aside a sanctions order under Rule 13 unless an abuse of discretion is shown. *Id.* A trial court abuses its discretion by (1) acting arbitrarily and unreasonably, without reference to any guiding rules or principles, or (2) misapplying the law to the established facts of the case. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). Thus, we will overturn a trial court's discretionary ruling only when it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See id.* Our review encompasses an examination of the entire record. *Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 666 (Tex.1996).

Rule 13 of the Texas Rules of Civil Procedure provides, in pertinent part:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215, upon the person who signed it, a represented party, or both.

TEX.R. CIV. P. 13. Courts shall presume that pleadings, motions, and other papers are filed in good faith. *Id.* No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. *Id.* "Groundless" for the purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. *Id.*

Based on the clear language of the rule, a party cannot obtain Rule 13 sanctions unless he proves the claims are groundless and that the opposing party brought the claim in bad faith or to harass the party. *Id.* One purpose of the rule is to check abuses in the pleading process; that is, to ensure that at the time the challenged pleading was filed, the litigant's position was factually grounded and legally tenable. *Mattly,* 19 S.W.3d at 896. Thus, the trial court must examine the facts and circumstances in existence at the time the pleading was filed to determine whether Rule 13 sanctions are proper. *Id.* Bad faith does not exist when a party merely exercises bad judgment or is negligent;

rather, "it is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Id.* Courts must presume the papers are filed in good faith, and the party moving for sanctions bears the burden of overcoming this presumption. *Id.*

 When imposing Rule 13 sanctions, the trial court is required to make particularized findings of good cause justifying the sanctions. *Id.* The trial court made no such findings in this case; however, Janet voiced no objection to the trial court's entry of Rule 13 sanctions without setting out the findings or the particulars of good cause justifying the sanctions. To preserve error for appeal, a party must timely present her objection to the trial court with sufficient specificity. TEX. R.APP. P. 33.1(a); *Alexander v. Alexander,* 956 S.W.2d 712, 713 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). By failing to timely object to the form of the Rule 13 order, Janet waived any error.

Furthermore, it is Janet's burden to furnish this court with a record that supports her allegations of error. *See Christiansen v. Prezelski,* 782 S.W.2d 842, 843 (Tex. 1990); *see also Budd v. Gay,* 846 S.W.2d 521, 523 (Tex.App.-Houston [14th Dist.] 1993, no writ) (holding that, without a sufficient record, the reviewing court cannot determine whether the trial court committed error or whether error was properly preserved). Janet has failed to present a record from the November 1999 hearing which resulted in the sanctions order. In the absence of a reporter's record of the hearing, we cannot determine whether the trial court committed error or whether any error was preserved. *See Youngs v. Choice,* 868 S.W.2d 850, 853 (Tex.App.-Houston [14th Dist.] 1993, writ denied) (holding that appellant waived any error regarding sanctions order by failing to provide the court with a record which

showed error); *see also Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 795 (Tex.1987) (finding that appellant had the burden of presenting a sufficient record to establish that the trial court acted outside the zone of reasonable disagreement). On this record, we can find no abuse of discretion in the trial court's granting of Rule 13 sanctions. Accordingly, we overrule Janet's third issue.

Having found no error, we affirm the trial court's judgment.