NUMBER 13-01-622-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

 

AARON
SHIELDS, C.B. SHIELDS,

WILLIAM
M. SHIELDS AND DELTA

LAKE
BOATNICKERS, INC. AND 

ROBERT
W. MCNABNEY,                                                            Appellants,

 

                                                             v.

 

DELTA
LAKE IRRIGATION 

DISTRICT,
ET AL.,                                                                          Appellees.

 

     On appeal
from the 332nd District Court of Hidalgo County, Texas.

 

 

                               MEMORANDUM
OPINION

 

                       Before
Justices Hinojosa, Yañez, and Castillo

                            Memorandum
Opinion by Justice Yañez

 








This appeal arises from a dispute regarding the
right to lease real property owned by Delta Lake Irrigation District (ADistrict@).  Appellees,
Delta Lakers Partnership (ALakers@), its individual partners, Gregg Carter, Ricardo
Alba, and Reagan Florence, and the District, its individual board members, Otha
Holland, Harold Lemmons, Jimmy Carlson, Thomas Richards, and Neal Galloway,
moved for summary judgment against appellants on numerous grounds.  By three separate orders, the trial court
granted appellees= motions on all causes of action asserted by
appellants, Delta Lake Boatnickers, Inc. (ABoatnickers@) and its president, Robert McNabney, and
Intervenors, Aaron Shields, C.B. Shields, and William Shields.  We affirm.

Background








On September 7, 1978, the District entered into a
lease agreement (AAgreement@) with the Boatnickers which provided the
Boatnickers the right to sublease individual lots owned by the District to
third parties for recreational purposes, including the construction of vacation
homes and picnic areas, in exchange for agreed-upon rental payments.[1]  In early 1996, the Boatnickers failed to
timely remit rent payments.  As a result,
a disagreement arose between the parties concerning their respective rights
under the Agreement.  On May 1, 1996, the
District=s board members voted to terminate the
Agreement.  Around that same time, they
also began negotiations with the Lakers and its partners in an attempt to enter
into a new lease agreement.  On May 24,
1996, the Boatnickers and McNabney filed suit against the District and its
board members, and the Lakers and its partners, seeking declaratory relief to
prevent the District and its board members from executing a new lease agreement
with the Lakers.  On November 6, 1998, as
pretrial discovery was ongoing, the Intervenors, comprised of several
individual sublessees of the Boatnickers, filed a plea-in-intervention in the
proceeding.  Thereafter, the District and
its board members, and the Lakers and its partners,  moved for summary judgment on traditional and
no-evidence grounds against the Boatnickers, McNabney, and the
Intervenors.  On June 19, 2001, without
stating its grounds, the trial court entered a final summary judgment in favor
of the District and its board members on all claims asserted by the Intervenors.  On June 20, 2001, the court, without
specifying its grounds, rendered a final summary judgment in favor of the
Lakers and its partners against the Boatnickers, McNabney, and Intervenors
regarding all asserted causes of action. 
Approximately eight months later, on February 14, 2002, the trial court
granted a final summary judgment in favor of the District and its individual
board members on all causes asserted by the Boatnickers and McNabney. 

In twenty-seven issues,[2]
the Boatnickers, McNabney, and Intervenors contend the 

trial court orders granting summary judgment in
favor of the District and its board members, and the Lakers and its partners
were improper. 

Standard of Review








When considering a traditional motion for summary
judgment,[3]
we review de novo to determine if the successful movant carried the burden of
showing that there is no genuine issue of material fact, and judgment should be
granted as a matter of law.[4]  In determining the issue of whether the
movant has carried this burden, all evidence favorable to the non‑movant
must be taken as true, and all reasonable inferences, including any doubts,
must be resolved in the non‑movant's favor.[5]


When a motion for summary judgment is based on rule
of civil procedure 166a(i), the Texas Supreme Court has held that the courts
must apply these rules in light of the following additional caveats:[6]

1. the no‑evidence motion can only be brought
against "a claim or defense on which an adverse party would have the
burden of proof at trial;"[7]

 

2. the motion must state the elements as to which
there is no evidence;[8]

 

3. the motion must be specific in challenging the
evidentiary support for an element of a claim;[9]

 

4. paragraph (i) does not authorize conclusory
motions or general no‑evidence challenges to an opponent's case;[10]

 

5. the response need only point out evidence that
raises a fact issue








on the challenged elements;[11]
and

6. the respondent is not required to marshal its
proof.[12]

"The trial court may not grant a no‑evidence
summary judgment if the respondent brings forth more than a scintilla of
probative evidence to raise a genuine issue of material fact."[13]  A party produces less than a scintilla of
evidence when the evidence is "so weak as to do no more than create a mere
surmise or suspicion" of a fact.[14]  A party produces more than a scintilla of
evidence if the evidence allows reasonable and fair‑minded people to
differ in their conclusions.[15]









No‑evidence points will be sustained when (1)
there is a complete absence of evidence of a vital fact, (2) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact
is no more than a scintilla, or (4) the evidence conclusively establishes the
opposite of a vital fact.[16]  We view the evidence in the light most
favorable to the non‑movant, disregarding all contrary evidence and
inferences, unless there is no favorable evidence or contrary evidence renders
supporting evidence incompetent or conclusively establishes the opposite.[17]


"When the trial court does not specify the
basis for its summary judgment," as is the case here, "the appealing
party must show it is error to base it on any ground asserted in the
motion."[18]  "The appellate court must affirm the
summary judgment if any one of the movant's theories has merit."[19]


The Boatnickers= and McNabney=s Appeal of the Trial Court=s February 14, 2002 Order

In their first issue, the Boatnickers and McNabney
contend the trial court erred in failing to enforce a rule 11 agreement between
them and counsel for the District and its board members, whereby  a hearing[20]
on the pending motion for summary judgment would not be heard until two weeks
after counsel for the Boatnickers and McNabney obtained deposition transcripts
from some of the District=s board members.[21]  








Under rule 11, Ano agreement between attorneys or parties touching
any suit pending will be enforced unless it be in writing, signed and filed
with the papers as part of the record, or unless it be made in open court and
entered of record.@[22]  A valid rule
11 agreement must contain all essential terms of the agreement and must be
complete within itself in every material detail.[23]


On April 6, 2001, counsel for the District and its
board members wrote a letter to counsel for the Boatnickers, McNabney, and
Intervenors:

Dear Counsel:

 

Please allow this letter to serve as notice that the
Delta Lake Irrigation District Defendants have postponed the hearing for their
Motion for Summary Judgment against Plaintiff Robert McNabney, which had been
set for hearing on April 19, 2001.  Ernie
and I have agreed to allow him enough time to take the depositions of some of
the District=s Board Members prior to a hearing on the Motion for
Summary Judgment. The hearing will be reset for approximately two (2) weeks
after he obtains possession of these witnesses= deposition transcripts.

 

Please take note that the Delta Lake Irrigation
District Defendants intend to move forward with their Motion for Summary
Judgment against the Intervenors, in all respects, on the hearing that is
scheduled for April 19, 2001.  Likewise,
there is no change as to [Laker=s] Motion for Summary Judgment, which will also be
heard on April 19th.[24]

 

It was further agreed to by Ernie and I that any
further depositions in this case will be postponed until after the April 19th
hearing.  It is my understanding from
talking with all other counsel that this agreement is mutually acceptable to
all.  If it is not, please let me know as
soon as possible.

 








This letter was filed with the trial court as a rule
11 agreement, and was expressly discussed at the summary judgment hearing on
April 19, 2001.  At that time, the court
asked counsel for the Boatnickers and its board members when he could take the
depositions.  Counsel stated, AAt this point in time I don=t think there is any disputes [sic] in scheduling, it
is just a matter of schedules.@  The court
then stated, AI=d like for you to give me anything and everything
that you=re going to give me within two weeks so that I could
make a ruling on this thing.@  Counsel did
not object or otherwise respond to the court=s directive. 
The depositions were not taken within the two-week period specified by
the trial court.  Immediately after the conversation concerning
the depositions, the court heard arguments concerning the summary judgment
motion filed by the Lakers and its partners, and shortly thereafter, the
hearing concluded. 

On May 18, 2001, one month after the hearing,
counsel for the District and its board members again corresponded with the
other attorneys on the case.  After
expressing frustration about ongoing deposition scheduling and rescheduling,
counsel stated:

I refuse to continue to go back and forth on these
depositions.  As it is we are way
past the Court=s deadline for completion of these depositions.  As far as I am concerned, the Court has everything
it needs to make a ruling on all of the pending Motions for Summary Judgment,
and these depositions are only serving to delay that ruling.  My clients are aware of the court-imposed
deadline and are impatient with these delays and rightfully so.  Thus, I will only cooperate with the taking of
any other depositions if they are set immediately for a date early on the week
of May 28th.

 

Furthermore, I am no longer willing to agree to
provide an additional two (2) weeks from the date that these transcripts are
received for a response to my Motions for Summary Judgment to be filed.  Given all of these delays, I believe that
there has been ample time to allow any response to my Motions for Summary
Judgment to be filed within a few days of receipt of the transcripts.  I do not think that this is
unreasonable.  In fact, I believe that I
have been more than reasonable and patient under the circumstances.

 

For the last time, I am asking for dates for the deposition of C.B. Shields.  If I do not hear back from all counsel by noon
on Monday, May 21, 2001, with dates, I will urge the Court to rule
on the Motions for Summary Judgment as soon as possible, based upon the
expiration of his court-imposed deadline.[25]

 








We cannot agree with the Boatnickers and McNabney
that the trial court erred in failing to enforce the rule 11 agreement.  First, the rule 11 agreement granted trial
counsel Aenough time@ to take the depositions of some of the District=s board members. 
On this record, we believe counsel for McNabney and the Boatnickers was
provided with Aenough time@ as promised under the rule 11 agreement.[26]  Moreover, while the parties clearly have the
right to make agreements regarding discovery, the trial court retains the
authority to manage its docket.[27]  As such, we conclude the court did not
violate the rule 11 agreement.[28]  We overrule the Boatnickers= and McNabney=s first issue. 

In their second issue, the Boatnickers and McNabney
contend the court order granting summary judgment was improper because the
District and its board members did not give them proper notice prior to
terminating the Agreement.  More
specifically, the Boatnickers and McNabney argue the Agreement is ambiguous as
to whether notice is required in the event of a non-payment of rent.  They urge this Court to determine the
Agreement is ambiguous, construe it against the District as the drafter of the
Agreement, and conclude it required notice prior to termination, which the
District failed to provide.  In contrast,
the District and its board members argue that termination was proper
because  the Agreement=s terms are not ambiguous and do not require notice
when a non-payment of rent occurs. 








Conflicting interpretations of a contract, and even
unclear or uncertain language, do not necessarily mean a contract is ambiguous.[29]  A contract is ambiguous only if there is
uncertainty as to which of two meanings is correct.[30]  If there is only one reasonable
interpretation of the contract, it is unambiguous,[31]
and the court will construe the contract as a matter of law.[32]  "Just because the parties disagree about
the proper construction of a contract does not mean that the contract is
ambiguous."[33]  "Courts should not strain to find an
ambiguity in a contract if, in doing so, they defeat the probable intentions of
the parties."[34]


The District and its board members moved for summary
judgment on several bases, requesting, inter alia, that the trial court
rule as a matter of law that the Agreement did not require notice prior to
termination in the event of a non-payment of rent.  Attached to their summary judgment pleadings
is a copy of the Agreement.  The relevant
portions are as follows:

2.  Term. 
The term of this lease shall be from September 1, 1978, through August
31, 1998, provided, that if the Lessee should fail promptly to pay the rental
timely, the lease may be terminated instanter without notice at District=s option.

. . . 








8.  Cancellation
for Breach.  It is expressly
understood and agreed that failure or default by said Lessee in the performance
of any duty or obligation on its part, under this contract, or breach by it of
any condition or land use restriction of this contract, herein set out, shall give
the District the absolute right and option to terminate this contract whenever
any such default or breach occurs or at any time while such default continues;
provided that district shall give Lessee written notice of any default or
breach (other than non-payment of rental) which is curable and shall not cancel
this lease if the breach or default is cured in a reasonable time, which shall
never exceed thirty days after notice given on Lessee=s failure to pay any rental timely.  District may, at its option, either declare
the lease terminated instanter, or it may accelerate the rentals payable for
the balance of the term hereof, whereon the entire sum shall be immediately
due, or it may pursue any other remedy available to it at law or in equity. 

 








Section 2 of the Agreement provides the District
with the option to terminate the lease without notice if the Boatnickers fail
to timely pay rent.  Section 8 also gives
the District the Aabsolute right and option@ to terminate the Agreement if a default or breach
occurs, provided that the District furnish the Boatnickers with written notice
and a reasonable time to cure.  The
Agreement then states that a reasonable time Ashall
never exceed thirty days after notice given on Lessee=s failure to pay any rental timely.@  However, excluded
from the notice requirement is default or breach for a non-payment of
rent.  Although Section 8 also contains
the phrase, Awhich shall never exceed thirty days after notice
given on Lessee=s failure to pay any rental timely,@ we conclude this language was included to explain
what constitutes a reasonable time.[35]  Because there is only one reasonable
interpretation of the relevant sections at issueBthat
notice is not required when a non-payment of rent occursBwe conclude the Agreement is unambiguous.[36]  As such, the trial court could have
determined as a matter of law that the Agreement was properly terminated
because it unambiguously states that notice is not required when a non-payment
of rent occurs.[37]  The Boatnickers= and
McNabney=s second issue is therefore overruled. 

In their third issue, the Boatnickers and McNabney
contend summary judgment was improper because the District and its board
members consented to the notice provision of the Agreement by their conduct.[38]  According to the Boatnickers and McNabney,
even if the Agreement did not require notice prior to termination, the District=s acceptance of late payment constituted a waiver of
the right to assert that notice is not required when a non-payment of rent
occurs.  In opposition, the District and
its board members argue that the Boatnickers and McNabney (1) waived their
argument by failing to cite to the appellate record, and (2) failed to present
any evidence showing that the District accepted a late payment.  Although the Boatnickers and McNabney cite to
the actual terms of the Agreement, they have failed to cite to evidence in the
appellate record in support of their claim that the District accepted a late
payment.[39]  As such, the Boatnickers= and McNabney=s third issue is overruled.  








In their fourth issue, the Boatnickers and McNabney
contend summary judgment was improper because the District and its board
members violated the Texas Open Meetings Act (Athe
Act@).[40]  They argue that language included in the
District=s public notices regarding future board meetings, in
particular, an April 26, 1996 notice regarding an upcoming board meeting at
which the Agreement would be considered, required a higher degree of
specificity.  They claim the Agreement
was a matter of public interest and any alteration to it could profoundly
affect the residents.  In contrast, the
District and its board members argue the notices were sufficiently specific
under the Texas Open Meetings Act, they did not violate the Act, and summary
judgment was therefore appropriate.

The April 26, 1996 notice states, in relevant part, AConsider and act on lease of south bank of Reservoir
No. 1 to Delta Lake Boatnickers, Inc., and future of the leased property.@  

The purposes of the Texas Open Meetings Act are to
enable public access to and increase public knowledge of government
decision-making.[41]  The Open Meetings Act is not a legislative
scheme for service of process; it has no due process implications.[42]
Rather, its purpose is to provide "openness at every stage of [a
governmental body's] deliberations."[43]









In reviewing notices under the Act, we must ensure
that these core purposes are served.[44]  However, we need not go further and inquire
into whether a notice was tailored to reach those specific individuals whose
private interests are most likely to be affected by the proposed government
action.[45]  The intended beneficiaries of the Act are not
individual citizens, such as the particular landowners affected, but members of
the interested public.[46]  If a "reader" is given notice, the
requirement of the Act is satisfied and its purpose served.[47]


The April 26th notice informs readers (1) that the
District=s board members were considering the future of the
Agreement, and (2) the location of the land affected by the Agreement.  After a review of all notices in the
appellate record, in particular, the April 26, 1996 notice, we conclude the
notices were sufficiently specific to satisfy the public interest, provided
readers with adequate information concerning the proposed governmental action,
and that the District and its board members therefore did not violate the Act.[48]  The Boatnickers= and
McNabney=s fourth issue is overruled.

In issue five, McNabney and the Boatnickers generally
contend the trial court erred in granting the District and its board members= no-evidence motion for summary judgment.  In support of their contention, McNabney and
the Boatnickers refer to the following evidence: (1) a copy of the proposed
lease agreement between the District and Lakers, (2) a default letter sent by
the District to the Boatnickers, and (3) three public notices of District board
meetings.  








The record shows the District and its board members
moved for summary judgment, inter alia, 
on grounds that (1) no evidence existed to support the Intervenors= tort claims, and (2) governmental and official
immunity barred Intervernors= tort claims.

We have already determined that the Agreement was
properly terminated because of the Boatnickers= and McNabney=s failure to timely pay rent, and that the District
was not required to send notice of default under the terms of the
Agreement.  We also concluded that the
District and its board members complied with the requirements of the Act.  Because the Boatnickers and McNabney failed
to bring forth more than a scintilla of
probative evidence to raise a genuine issue of material fact, the trial court could have properly granted summary
judgment on no-evidence grounds.[49]  Accordingly, we overrule this issue. 

In issue six, McNabney and the Boatnickers further
argue that with respect to their tort claims, the trial court erred in granting
summary judgment  More specifically,
their arguments are as follows:

Governmental and official immunity did not bar
Appellants= claims, as public officials can be sued in their
individual capacities for wrongful unofficial acts done outside the scope of
their duty or office.  Governmental
entities can be held liable for the intentional torts of employees.

 

* * *

 

In the case at bar, a fact issue exists as to
whether the Appellees acted maliciously and wilfully in violating the Texas
Open Meetings Act and in taking steps to conceal the notice of default from
Appellees by sending the notice to the wrong address.

 








            However, we have already determined
that the trial court properly granted no-evidence summary judgment in favor of
the District and its board members because McNabney and the Boatnickers failed
to bring forth more than a scintilla of probative evidence to support their
tort claims, and because the District and its board members complied with the
Act.  Consequently, it is unnecessary to
address the Boatnickers= and McNabney=s arguments regarding the District=s affirmative defenses and allegations concerning
violations of the Act.[50]  Accordingly,
their sixth issue is overruled.

            In
a seventh issue, the Boatnickers and McNabney contend the court erred in 

granting summary judgment because discovery
admissions were ordered withdrawn by the trial court.  However, the Boatnickers and McNabney failed
to adequately brief this argument and support it with citation to appropriate
legal authority.[51]  Therefore, we will not address their seventh
issue.

In their eighth issue, the Boatnickers and McNabney
contend the court erred in awarding the District attorney=s fees of $55, 527.71 because the District had not
requested the award in its motion for summary judgment.  In contrast, the District argues the award of
attorney=s fees was proper because (1) the District requested
the award in its motion for summary judgment, and (2) the amount awarded was
supported by an attorney=s fee affidavit.

A summary judgment may be granted for attorney's
fees where an uncontradicted affidavit shows that the affiant is qualified to
express an opinion as to the reasonableness of the fee and sets forth the basis
for such an opinion.[52]









Here, the record shows that counsel for the District
and its board members requested attorney=s fees of $55,527.71 in its summary-judgment
pleadings and supported its request with an affidavit from Raymond Thomas,
counsel of record for the District.  In
its final judgment, the trial court ordered that the District recover attorney=s fees as follows: 


 

IT IS FURTHER ORDERED that, based upon the affidavit
for attorneys= fees filed by the Water District Defendants that
proves reasonable and necessary attorneys= fees, [Boatnickers] shall pay the [District]
$55,527.71 for attorneys= fees, for which each Plaintiff shall be jointly and
severally liable.

 

The record reflects that the Boatnickers and
McNabney failed to controvert the request for attorney=s fees with an affidavit of their own opposing the
District=s request for attorney=s
fees. 

Because the record shows the District requested
attorney=s fees in its summary judgment pleadings, and
because the award is supported by an uncontroverted affidavit, we conclude the
court properly granted summary judgment regarding the District=s request for attorney=s
fees.[53]  We overrule the Boatnickers= and McNabney=s eighth issue.[54]  

Intervenors= Appeal
of the Trial Court=s June 19, 2001 Order

            In the Intervenors= first issue, they contend generally that the trial
court erred in 








granting the District and its board members= motion for summary judgment.  However, the Intervenors= brief concerning this issue consists of nothing more
than a recitation of the summary-judgment standard of review.  Because Intervenors fail to present a clear
and concise argument with appropriate citation to the record in support of this
contention, we conclude they have presented nothing for us to review.[55]  We overrule their first issue.

In their second through fourth issues, the
Intervenors contend the court erred in granting the District and its board
members= motion for summary judgment regarding the
Intervenors= claim for breach of contract and request for
declaratory and injunctive relief because (1) the District and its board waived
their right on appeal to assert that section 13 of the Agreement was
unenforceable; (2) the summary judgment motion did not conclusively establish
compliance with section 13; (3) neither the District or its board members were
authorized under section 13 to enter into negotiations with the Lakers; (4) the
District and its members failed to conclusively establish that negotiations
concerning the prospect of a future lease were approved by a majority of
sublessees, as required by section 13; and (5) fact-issues exist regarding
whether the District and/or its board members violated the Open Meetings
Act.  In contrast, the District and its
board members argue that the Intervenors= claims are unmeritorious because the Intervenors
possess no enforceable contractual rights under the Agreement.








The elements of a breach of contract claim are (1)
the existence of a valid contract, (2) performance or tendered performance by
the plaintiff, (3) breach of the contract by the defendant, and (4) damages to
the plaintiff resulting from that breach.[56]  A party breaches a contract when the party
fails or refuses to perform an act that it expressly promised to perform.[57]  

If there is no ambiguity, the construction of the
written instrument is a question of law for the Court.[58]  It is the general rule of the law of
contracts that where an unambiguous writing has been entered into between the
parties, the Courts will give effect to the intention of the parties as
expressed or as is apparent in the writing.[59]  In the usual case, the instrument alone will
be deemed to express the intentions of the parties for it is the objective, not
subjective, intent that controls.[60]  The primary concern of a court interpreting a
contract is to ascertain and to give effect to the intentions of the parties as
expressed in the instrument.[61]









However, an agreement to make a future contract is
enforceable only if it is specific as to all essential terms, and no terms of
the proposed agreement may be left to future negotiations.[62]  An agreement to enter into negotiations in
the future cannot be enforced because the court has no means to determine what
sort of contract the negotiations would have produced.[63]  Courts have long held that an agreement to
enter into negotiations in the future is unenforceable.[64]


Here, the District and its board members attached a
copy of the Agreement to their summary-judgment pleadings.  Section 13 states, in relevant part, ADistrict agrees that on default of performance
hereof by Boatnickers . . . District will negotiate in good faith with any duly
appointed representative of a majority of the last sublessees of Boatnickers .
. . in an effort to make a new lease with them.@  After a review of evidence, we conclude the
terms of section 13 constitute no more than an agreement to enter into future
negotiations, and, as such, it is unenforceable.[65]  In light of our conclusion, we overrule the
Intervenors= arguments regarding section 13.  Further, because we have already concluded
that the Open Meetings Act was not violated, it is unnecessary to address the
Intervenors= allegation that the Act was violated.[66]








In issue five, Intervenors contend summary judgment
on their claim for declaratory relief was improper prior to a determination of
whether the Agreement was properly terminated. 
According to the Intervenors, their declaratory request that the court
deem the Agreement void or voidable should not have been decided until the
issue of whether the Agreement was properly terminated was adjudicated.  However, in the Boatnickers= and McNabney=s second issue, we concluded that the trial court
could have found that termination of the Agreement was proper.  In light of our conclusion, the Intervenors= contention need not be addressed.  Accordingly, we overrule issue five.[67]

In issue six, the Intervenors contend the trial
court abused its discretion in awarding the counsel for the District and its
board members attorney=s fees because there was no basis in law or fact for
such an award.  In contrast, counsel for
the District and its board members argues that attorney=s fees were properly awarded under the declaratory
judgments act.

Section 37.009 of the Texas Civil Practice and
Remedies Code explicitly states that the trial court may award reasonable and
necessary attorney=s fees as are equitable and just for any proceeding
brought under the Texas Uniform Declaratory Judgments Act.[68]  Under this standard, an award of attorney=s fees does not depend on a finding that one of the
parties prevailed.[69]  








The award of attorney=s fees
in a declaratory judgment action is entrusted to the discretion of the trial
court.[70]  However, the attorney=s fees must be reasonable, necessary, equitable, and
just.[71]  Moreover, an award of attorney=s fees must be supported by the evidence.[72]  Factors the trial court should consider when
determining the reasonableness of attorney=s fees include (1) the time and labor required, the
novelty and difficulty of the questions involved, and the skill required to
perform the legal service properly; (2) the likelihood that the acceptance of
the particular employment will preclude other employment; (3) the fee
customarily charged in the locality for similar legal services; (4) the amount
involved and the results obtained; (5) the time limitations imposed by the
client or by the circumstances; (6) the nature and length of the professional
relationship with the client; (7) the experience, reputation, and ability of
the lawyer or lawyers performing the services; and (8) whether the fee is fixed
or contingent on results obtained or uncertainty of collection before the legal
services have been rendered.[73]


The Intervenors contend the District=s counsel is not entitled to attorney=s fees because he failed to request them in its
summary judgment pleadings.  However, the
record shows that counsel for the District requested attorney=s fees in its summary judgment pleadings.[74]  Under these circumstances, we conclude it was
within the court=s discretion to award the attorney=s fees.[75]
 








The Intervenors further contend that the evidence of
attorney=s fees was, as a matter of law, insufficient to
support the award.  According to the
Intervenors, the affidavit of Raymond Thomas was insufficient insofar as it was
conclusory and failed to incorporate time sheets or other supporting data to
support the attorney=s fee request. 


Based on our review, Thomas=s affidavit was legally sufficient to support the
trial court's award of attorney's fees. 
Thomas testified that he is a duly licensed attorney, he is familiar
with the usual and customary attorney's fees in Hidalgo County, he has personal
knowledge of the services rendered to the District on this matter, and those
services were reasonable and necessary. 
The Intervenors did not object to this evidence at trial, nor did they
produce any controverting evidence regarding attorney=s fees. 
Accordingly, we conclude Thomas=s affidavit was legally sufficient to support the
trial court's judgment for attorney's fees.[76]


Finally, the Intervenors argue that Thomas=s affidavit is insufficient insofar as it fails to
segregate the time and work spent on claims for which attorney=s fees are not permitted.  Generally, the failure to segregate
attorney's fees in a case containing multiple causes of action, when only some
of which entitle the recovery of fees, can result in the recovery of no fees.[77]  However, in the instant case, the Intervenors
failed to object to the failure to segregate. 
Accordingly, any error in failing to segregate the fees was waived.[78]  Based on the foregoing, issue six is
overruled.








In issue seven, the Intervenors contend the trial
court erred in granting the District=s and its board members= no-evidence motion for summary judgment as to their
tort claims because there is evidence to support each element thereof.

The Intervenors first argue that summary judgment
was improperly granted as to their conspiracy claim.  The record shows the District and its board
members moved for summary judgment on all of the Intervernors= tort claims on two grounds: (1) that no evidence
existed to support any of the elements of the Intervenors= conspiracy claim, and (2) governmental and official
immunity. 

We previously determined that the trial court
properly granted summary judgment on grounds that no probative evidence existed
to support the tort claims asserted against the District and its board
members.  Consequently, it is unnecessary
to address the Intervenors= arguments concerning their conspiracy claim.[79]

The Intervenors also contend the trial court
improperly granted the no-evidence summary judgment because they were not
allowed an adequate time for discovery. 
When a party contends that it has not had an adequate opportunity for
discovery before a summary judgment hearing, it must file either an affidavit
explaining the need for further discovery or a verified motion for continuance.[80]  In the instant case, the Intervenors did
neither.[81]  We overrule issue seven. 








In issue eight, the Intervenors contend the trial
court erred in granting summary judgment on their conspiracy claims against the
District=s board members on grounds of official
immunity.  According to the Intervenors,
the evidence did not conclusively demonstrate that the members exercised a
discretionary function or acted in good faith in attempting to enter a new lease
agreement on the District=s behalf.

However, we have already concluded that the conduct
and decisions of the individual board members with respect to the termination
of the Agreement were appropriate.[82]  As such, we overrule issue eight.

Intervenors= Appeal of the Trial Court=s June 20, 2001 Order

 

In their first issue challenging the summary judgment
granted in favor of the Lakers and its partners, the Intervenors contend
generally that the trial court erred in granting the no-evidence motion for
summary judgment.  However, the
Intervenors= brief regarding this issue consists of nothing more
than a recitation of the summary-judgment standard of review.  Because the Intervenors fail to present a
clear and concise argument with appropriate citation to the record in support
of this contention, we conclude they have presented nothing for us to review.[83]  We overrule their first issue.

In issues two, three, and four, the Intervenors
contend the court erred in granting summary judgment because fact-issues exist
regarding compliance with section 13 of the Agreement and concerning whether
the Texas Open Meetings Act was violated. 
We have already concluded that section 13, as an agreement to enter into
future negotiations, was unenforceable as a matter of law, and that the Open
Meetings Act was not violated by the District or its board members.  We therefore do not readdress these
contentions,[84]
and overrule the Intervenors= second, third and fourth issues. 








In issue five, the Intervenors contend summary
judgment on their claim for declaratory relief was improper prior to a
determination regarding whether the Agreement was properly terminated.  However, we have previously addressed this
issue.[85]


In issue six, the Intervenors contend the trial court
abused its discretion in awarding counsel for the Lakers and its partners
attorney=s fees because there was no basis in law or fact for
such an award.  We have already addressed
the legal basis for the award of attorney=s fees in connection with the Intervenors= appeal of the June 19, 2001 order granting summary
judgment in the District=s favor.[86]  Attorney=s fees were properly awarded under the declaratory
judgments act.  








The Intervenors= complaints regarding the sufficiency of the evidence
to support the award mirror those raised previously regarding the attorney=s fees affidavit provided by Raymond Thomas.[87]  We have reviewed the affidavit of Luis M.
Cardenas, counsel for the Lakers and its partners, and conclude Cardenas=s affidavit was legally sufficient to support the
trial court's award of attorney's fees. 
Cardenas testified that he is a duly licensed attorney, he is familiar
with the usual and customary attorney's fees in Hidalgo County, he has personal
knowledge of the services rendered in this matter, and those services were reasonable
and necessary.  The Intervenors did not
object to this evidence at trial and did not produce any controverting evidence
regarding attorney=s fees. 
Accordingly, we conclude that the affidavit was legally sufficient to
support the trial court's award of attorney's fees.[88]  

Finally, the Intervenors argue that Cardenas=s affidavit is insufficient insofar as it fails to
segregate the time and work spent on claims for which attorney=s fees are not permitted.  However, the Intervenors failed to object to
the failure to segregate.  Any error in
failing to segregate the fees was waived.[89]  We overrule issue six.

In issues seven and eight, the Intervenors contend
the trial court erred in granting the motion for summary judgment on their
claim for tortious interference with a prospective contract or an existing
contract, respectively, because there is evidence to support each element of
these claims.  

The record shows the Lakers and its partners moved
for no-evidence summary judgment on, inter alia, the basis that no
evidence existed to support any element of the Intervenors= claim for tortious interference with a prospective
or an existing contract.








The elements for a tortious interference with
prospective contract cause of action are: 
(1) a reasonable probability that the parties would have entered into a
contractual relationship; (2) an intentional and malicious act by the defendant
that prevented the relationship from occurring; (3) with the purpose of harming
the plaintiff; (4) the defendant lacked privilege or justification to do the
act; and (5) actual harm or damage resulted from the defendant's interference.[90]  To maintain this cause of action, an
appellant must have direct evidence of appellees' intent to interfere.[91]  Intent is established if there is direct
evidence that appellees desired to interfere or if they knew that the
interference was certain or substantially certain to occur as a result of their
conduct.[92]  If appellees had no desire to interfere with
appellant's action but knew that it would be a mere incidental result of
conduct for another purpose, any interference may not be improper.[93]


In Texas, a party bringing suit for tortious interference
with an existing contract must prove four elements: (1) a contract subject to
interference exists; (2) the act of interference was wilful and intentional;
(3) the intentional act proximately caused the plaintiff's damage; and (4)
actual damage or loss occurred.[94]









Tortious interference with a prospective contract and
tortious interference with an existing contract each require a showing of
intent.  The Intervenors failed to bring
forth any evidence to support that the Lakers or its partners acted with the
requisite intent and malice for the specific purpose of harming the
Intervenors.  Although Intervenors
attached an affidavit of Aaron Shields to their summary judgment response, it
contains hearsay testimony that was objected to by counsel for the Lakers and
its partners during the hearing on the summary judgment motion.  Because Intervenors failed to provide more
than a scintilla of probative evidence with respect to intent, the trial court
could have properly granted summary judgment on the Intervenors= tortious interference claims.[95]  Accordingly, we overrule issues seven and
eight. 

In issue nine, the Intervenors contend the trial
court erred in granting the motion for summary judgment on their conspiracy
claim because evidence exists to support each of the elements, which
include:  

(1) two or more persons;

(2) an object to be accomplished;

(3) a meeting of the minds on the object or course of
action;

(4) one or more unlawful, overt acts; and

(5) damages as a proximate result.[96]


The Lakers and its partners moved for summary
judgment regarding the conspiracy claim on the basis that no evidence existed
to support the following elements (1) one or more unlawful, overt acts; (2) an
object to be accomplished; and (3) a meeting of the minds.   In their response, the Intervenors argued
that evidence existed to support its conspiracy claim.  In support of their claim, the Intervenors
attached a letter sent to the District by counsel for the Lakers and its
partners requesting that the District=s board consider at its next meeting the prospect of
entering into a lease with the Lakers should the opportunity become available.








However, because the Intervenors failed to bring
forth more than a scintilla of probative evidence to support that one or more
unlawful, overt acts had occurred, summary judgment regarding the conspiracy
claim was proper.[97]  We overrule issue nine.

In issue ten, the Intervenors contend the trial court
abused its discretion in granting the Lakers= and its partners no-evidence summary judgment motion
without allowing an adequate time for discovery.  However,
the Intervenors failed to file either an affidavit explaining the need for
further discovery or a verified motion for continuance.[98]  Accordingly, we overrule their tenth issue. 

Conclusion

Because we have overruled all issues raised on
appeal by all parties, we affirm the trial court=s
final summary judgment orders.

 

                                                              
                                                      

LINDA REYNA YAÑEZ,

Justice

 

 

 

Memorandum
opinion delivered and filed 

this
the 11th day of May, 2006.                                

 

 











[1]  At the time the Agreement was
executed, Dr. C.H. Spence owned and operated the Boatnickers.  On July 21, 1995, however, Mr. McNabney
purchased ownership and operation of the Boatnickers and became its
president.  After the purchase, he
assumed all liabilities, assets, and profits attributable to the entity.





[2] 
On appeal, the Boatnickers and McNabney jointly filed one brief.  By separate brief, the Intervenors also
appeal the trial court=s judgment.





[3]  See Tex.
R. Civ. P. 166a(c).





[4]  See M.D. Anderson v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000); Am.
Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  





[5] 
See Willrich,
28 S.W.3d at 23‑24.





[6] 
See Tex. R. Civ. P. 166a(i); Oasis Oil Corp. v. Koch Ref. Co., 60
S.W.3d 248, 252 (Tex. App.BCorpus Christi 2001, pet. denied). 





[7]  Oasis Oil Corp., 60 S.W.3d at 252. 





[8] 
See id.





[9] 
See id.





[10] 
See id.





[11]  See id. 





[12] 
See id. 





[13] 
See Zapata v. The Children's Clinic, 997 S.W.2d 745, 747 (Tex.
App.BCorpus Christi 1999, no pet.).  





[14] See King Ranch, Inc. v. Chapman,
118 S.W.3d 742, 751 (Tex. 2003) (quoting Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983)).  





[15]  See id.





[16]  See id. 





[17] 
See id.





[18]  See Star‑Telegram, Inc. v.
Doe, 915 S.W.2d
471, 473 (Tex. 1995).  





[19]  See id.





[20]  The pending summary judgment
motions filed by the District and its board members, and the Lakers and its
partners, were to be addressed at the pending hearing.





[21]  See Tex.
R. Civ. P. 11; Padilla v. LaFrance, 907 S.W.2d 454, 459 (Tex.
1995).  





[22]  See Padilla, 907 S.W.2d at 459.





[23]  See id. at 460; Neasbitt v. Warren,
105 S.W.3d 113, 116 (Tex. App.BFort Worth 2003, no pet.).





[24]  (emphasis in original).





[25]  (emphasis in original).





[26] 
See Tex. R. Civ. P. 11; Padilla, 907
S.W.2d at 459; Neasbitt, 105 S.W.3d at 116.





[27]  See Tex.
R. Civ. P. 191.1 (trial court may modify discovery procedures and
limitations if there is good cause and the modification is not prohibited by
another rule).





[28]  See Tex. R.
Civ. P. 191.1; Padilla, 907 S.W.2d at 459; Neasbitt, 105 S.W.3d at 116.





[29] 
See Kurtz v. Jackson, 859 S.W.2d 609, 611 (Tex. App.BHouston [1st Dist.] 1993, no
writ).  





[30]  See id.  





[31]  See id.





[32]  See Wright v. Eckhardt, 32 S.W.3d 891,
894 (Tex. App.BCorpus Christi 2000, no pet.)
(citing Nat'l Union Fire Ins. v. CBI Indus., Inc., 907 S.W.2d 517, 520
(Tex. 1995)). 





[33] 
See Appleton v. Appleton, 76 S.W.3d 78, 84 (Tex. App.BHouston [14th Dist.] 2002, no pet.)
(citing  Forbau v. Aetna Life
Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994)). 






[34]  Id. (citing Licata v. Licata, 11
S.W.3d 269, 277 (Tex. App.BHouston [14th Dist.] 1999, pet. denied)).





[35]  See Appleton, 76 S.W.3d at 84; Kurtz,
859 S.W.2d at 611.  





[36] 
See Appleton,
76 S.W.3d at 84; Kurtz, 859 S.W.2d at 611; Forbau, 876 S.W.2d at
134.





[37]  See Forbau, 876 S.W.2d at 134; Wright,
32 S.W.3d at 894 (citing Nat'l Union Fire Ins., 907 S.W.2d at 520); Kurtz,
859 S.W.2d at 611.





[38]  In a subissue, the Boatnickers and
McNabney also contend the Agreement=s terms regarding notice are ambiguous.  However, we have already overruled this
issue.  Therefore, we will not readdress
this contention.  See Tex. R. App. P. 47.1.





[39]  See Tex.
R. App. P. 38.1(h).





[40]  See Tex.
Gov=t Code ' 551.041 (Vernon 2005).





[41] 
See San Antonio v. Fourth Court of Appeals, 820 S.W.2d 762, 765 (Tex. 1991). 





[42] 
See id.  





[43] 
See Acker v. Texas Water Comm'n, 790 S.W.2d 299, 300 (Tex. 1990). 





[44]  See Fourth Court of Appeals, 820 S.W.2d at 765.  





[45] 
See id.  





[46]  See id.  





[47]  See id.





[48] 
See id.





[49]  See City of Keller, 168 S.W.3d at 810-11; King
Ranch, 118 S.W.3d at 751.





[50]  See Tex. R.
App. P. 47.1. 





[51] 
See Tex. R. App. P. 38.1(h).





[52]  See Himes v. Am. Fence Co., 379 S.W.2d 290, 291 (Tex. 1964); Gen.
Elec. Supply Co. v. Gulf Electroquip, Inc., 857 S.W.2d 591, 601 (Tex. App.BHouston [1st Dist.] 1993, writ
denied); Sunbelt Constr. Corp., Inc. v. S & D Mech. Contractors, Inc.,
668 S.W.2d 415, 418 (Tex. App.BCorpus Christi 1983, writ ref'd n.r.e.).





[53]  See Himes, 379 S.W.2d at 291; Gen. Elec.
Supply Co., 857 S.W.2d at 601; Sunbelt Constr. Corp., Inc., 668
S.W.2d at 418.





[54]  Although the Boatnickers and
McNabney raise a ninth issue on appeal, because it presents no new legal
grounds for review, we will not address it. 
See Tex. R. App. P.
47.1.





[55] 
See Tex. R. App. P.
38.1(h).





[56] 
See Adams v. H & H Meat Prods., Inc., 41 S.W.3d 762, 771 (Tex. App.BCorpus Christi 2001, no pet.).  





[57] 
See Methodist Hosp. v. Corp. Comm., Inc., 806 S.W.2d 879, 882
(Tex. App.BDallas 1991, writ denied). 





[58]  See City of Pinehurst v. Spooner
Addition Water Co.,
432 S.W.2d 515, 518 (Tex. 1968).  





[59]  Id.  





[60]  Id.  





[61] 
See R & P Enter. v. LaGuarta, Gavrel & Kirk, 596 S.W.2d
517, 518 (Tex. 1980).





[62]  See Fort Worth Indep. Sch. Dist. v.
City of Fort Worth,
22 S.W.3d 831, 846 (Tex. 2000).  





[63] 
See Cent. Tex. Micrographics v. Leal, 908 S.W.2d 292, 296‑97 (Tex. App.BSan Antonio 1995, no writ). 





[64]  See, e.g., Radford v. McNeny, 104 S.W.2d 472, 474 (1937); Marantha
Temple v. Enter. Prod., 893 S.W.2d 92, 104 (Tex. App.BHouston [1st Dist.] 1994, writ
denied); McCurry v. Aetna Cas. & Sur. Co., 742 S.W.2d 863, 866 (Tex.
App.BCorpus Christi 1987, writ denied); Weitzman
v. Steinberg, 638 S.W.2d 171, 175 (Tex. App.BDallas 1982, no writ); Estate of
Eberling v. Fair, 546 S.W.2d 329, 334 (Tex. Civ. App.BDallas 1976, writ ref'd
n.r.e.).  





[65]  See Marantha Temple, 893 S.W.2d at 104.





[66] 
See Tex. R. App. P. 47.1.





[67]  See Tex.
R. App. P. 47.1.





[68]  See Tex.
Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 1997); Bocquet v. Herring, 972
S.W.2d 19, 20 (Tex. 1998).  





[69] 
See Barshop v. Medina Cty. Underground Water Conserv. Dist., 925
S.W.2d 618, 637 (Tex. 1996). 





[70]  See Bocquet, 972 S.W.2d at 20. 





[71]  See Tex.
Civ. Prac. & Rem. Code Ann. ' 37.009; Columbia Rio Grande Reg'l Hosp. v. Stover,
17 S.W.3d 387, 397 (Tex. App.BCorpus Christi 2000, no pet.).  





[72] 
See Bocquet, 972 S.W.2d at 20. 





[73]  See Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999).





[74] 
See, e.g., Swate v. Medina Cmty. Hosp., 966 S.W.2d 693, 701 (Tex.
App.BSan Antonio 1998, pet. denied)
(request for attorney=s fees must be supported by the
pleadings).  





[75]  See Hoxie Implement Co. v. Baker, 65 S.W.3d 140, 151 (Tex. App.BAmarillo 2001, pet. denied); Templeton
v. Dreiss, 961 S.W.2d 645, 671 (Tex. App.BSan Antonio 1998, pet. denied)
(noting that under section 37.009 the party awarded attorney=s fees does not have to be the one
who filed the declaratory judgment claim); First City Nat'l Bank v. Concord
Oil Co., 808 S.W.2d 133, 138‑39 (Tex. App.BEl Paso 1991, no writ) (holding
that when either the plaintiff or plaintiff and defendant seek declaratory
relief, attorney's fees may be awarded to either party); Ritchie v. City of
Fort Worth, 730 S.W.2d 448, 451 (Tex. App.BFort Worth, writ ref'd n.r.e.)
(holding the same); First Nat'l Bank v. John E. Mitchell Co., 727 S.W.2d
360, 363 (Tex. App.BAmarillo 1987, writ ref'd n.r.e.)
(stating that when the plaintiff seeks declaratory relief, the trial court may
award attorney's fees to any party). 

 





[76]  See Tex. Commerce Bank v. New, 3 S.W.3d 515, 517-18 (Tex. 1999);
see, e.g., Cap Rock Elec. Coop. v. Texas Utils. Elec. Co., 874
S.W.2d 92, 101‑02 (Tex. App.BEl Paso 1994, no writ) (uncontested affidavit establishing
prima facie case for attorney's fees legally sufficient to support fee award); Murrco
Agency, Inc. v. Ryan, 800 S.W.2d 600, 606 (Tex. App.BDallas 1990, no writ).





[77]  See Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 389 (Tex.
1996).  





[78] 
See id.; Estate of Mongague v. Nat=l Loan Investors, Inc., 70 S.W.3d 242, 250 (Tex. App.BSan Antonio 2001, no pet.); Hoxie
Implement Co., 65 S.W.3d at 151.            





[79]  See Tex.
R. App. P. 47.1.





[80]  See Tenneco Inc. v. Enter. Prods.
Co., 925 S.W.2d
640, 647 (Tex. 1996).  





[81] 
See id.





[82] 
See Tex. R. App. P.
47.1.





[83] 
See Tex. R. App. P.
38.1(h).





[84] 
See Tex. R. App. P. 47.1.





[85] 
See Tex. R. App. P. 47.1.





[86] 
See id.  





[87] 
See id.





[88] 
See Tex. Com. Bank, 3 S.W.3d at 517-18. 





[89]  See id.; Tex.
R. App. P. 33.1(a); Estate of Mongague, 70 S.W.3d at 250; Hoxie
Implement Co., 65 S.W.3d at 151.





[90]  See Larson v. Family Violence &
Sexual Assault Prevention Ctr., 64 S.W.3d 506, 517 (Tex. App.BCorpus Christi 2001, pet. denied); Garner
v. Corpus Christi Nat'l Bank, 944 S.W.2d 469, 477 (Tex. App.BCorpus Christi 1997, writ denied). 





[91] 
See Browning‑Ferris, Inc. v. Reyna, 865 S.W.2d 925, 927
(Tex. 1993); Larson, 64 S.W.3d at 517. 





[92] 
See Bradford v. Vento, 48 S.W.3d 749, 757 (Tex. 2001). 





[93]  Id.





[94]  See Juliette Fowler Homes v. Welch
Assocs., 793 S.W.2d
660, 665 (Tex. 1990); Ski River Dev., Inc. v. McCalla, 167 S.W.3d 121,
140 (Tex. App.BWaco 2005, pet. denied).





[95]  See Larson, 64 S.W.3d at 517; Garner,
944 S.W.2d at 477. 





[96] 
See Chon Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005).  





[97] 
See id.





[98]  See Tenneco, Inc., 925 S.W.2d at 647.