

# OPINION

No. 04-08-00786-CV

Mark **CANTU**,
Appellant

v.

**GUERRA & MOORE, LTD., LLP.**, and Romero, Gonzalez & Benavides, LLP,
Appellees

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2005-CVQ-000954-D2
Honorable Raul Vasquez, Judge Presiding[1]

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice
                Marialyn Barnard, Justice

Delivered and Filed:   October 28, 2009

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

This is an appeal from a final judgment entered in favor of appellees, following a jury trial

in a dispute between attorneys with competing claims to attorney's fees. We reverse the directed

---

[1] The Honorable Elma Teresa Salinas Ender presided over the trial, except for the closing arguments, deliberations, and entry of judgment, which were presided over by The Honorable Raul Vasquez.

verdict in favor of appellee, Romero, Gonzalez & Benavides, LLP; we reverse the award of costs against appellant, Mark Cantu; and we remand, in part, for further proceedings. We affirm the judgment in all other respects.

## BACKGROUND

This suit over attorney's fees has its origin in a product liability/wrongful death action arising from the September 2004 death of Santa Magdalena Gonzalez and from injuries to her brother, Zacarias Gonzalez. Zacarias originally retained the law firm of Guerra & Moore, Ltd., LLP ("Guerra") in January 2005. Less than one month later, he terminated that representation and retained the Law Offices of Mark Cantu, which filed the product liability/wrongful death lawsuit on July 18, 2005. At this time, Glenn Romero, Juan Gonzalez, and Rick Benavides were associates at the Cantu law firm. In November 2006, Romero, Gonzalez, and Benavides left to form their own law firm, Romero, Gonzalez & Benavides, LLP ("RG&B"). Also in November 2006, the Gonzalez family terminated their representation with the Cantu firm and retained RG&B.

The Gonzalez family reached a settlement with the defendants in their product liability/wrongful death lawsuit in late 2006; however, while that suit was still pending, Guerra filed a plea in intervention asserting its right to forty percent of any recovery obtained by the Gonzalez family. On January 16, 2007, the Gonzalez family, represented by RG&B, filed a motion to remove Cantu as an attorney of record in the product liability/wrongful death suit. Cantu and RG&B eventually reached an agreement over how to allocate attorney's fees and expenses following settlement of the product liability/wrongful death suit. On April 25, 2007, the trial court signed an agreed order (1) ordering RG&B to drop any and all interventions pending against Cantu in other lawsuits; (2) removing Cantu as an attorney from the lawsuit; (3) ordering the following division of

attorney's fees: (a) 56.5% to Cantu, (b) 10% to the Law Offices of Andres Reyes and Mario Castillo, and (c) 33.5% to RG&B; and (4) ordering that all reasonable costs and expenses incurred by Cantu be paid in full.

On May 14, 2007, Guerra filed an amended plea in intervention, alleging claims against Cantu for libel and tortious interference with the contract it had to represent the Gonzalez family. On May 24, 2007, the attorney's fees allocated under the April 25, 2007 agreed order were deposited into the court's registry. On June 26, 2007, the trial court signed an order (1) granting disbursal of damages to the Gonzalez family pursuant to the settlement of the product liability/wrongful death lawsuit, (2) ordering disbursal of attorney's fees held in the court's registry to RG&B and to the Law Offices of Andres Reyes and Mario Castillo, and (3) ordering that the fees awarded to Cantu remain in the court's registry pending resolution of the intervention filed by Guerra.

On February 14, 2008, Cantu filed a third-party plaintiff's original petition, alleging claims for breach of fiduciary duty and fraud against RG&B. On February 15, 2008, Cantu filed a motion to recuse Judge Raul Vasquez on the grounds that he served as a mediator in the settlement that led to the April 25, 2007 agreed order. The motion to recuse was denied by the administrative judge. On April 21, 2008, RG&B filed its counter-suit against Cantu, alleging he breached the settlement that led to the April 25, 2007 agreed order and asking for rescission of that agreement. Trial before a jury commenced in April 2008. Following trial, the court signed a final judgment, ordering that (1) Guerra recover $1.6 million plus interest against Cantu, (2) Cantu was not entitled to any of the funds held in the court's registry, (3) RG&B was solely entitled to the funds held in the court's registry, and (4) Cantu's contract with the Gonzalez family was illegal and void. Cantu's motion for new trial was denied, and he filed this appeal.

## STATUTE OF LIMITATIONS

In his first issue, Cantu asserts Guerra's claims for tortious interference with both an existing contract and a prospective contract were barred by the statute of limitations. According to Cantu, Guerra's tortious interference claim accrued on February 23, 2005 when Guerra was first notified by Zacarias Gonzalez that he was terminating representation with Guerra. Guerra filed its first plea in intervention on January 5, 2007, but did not name Cantu as a defendant until Guerra filed its amended plea on May 14, 2007. Therefore, Cantu concludes, Guerra's claims against him are time-barred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (two-year limitations for interference with a contract) (Vernon Supp. 2008).

At trial, Guerra argued it did not discover Cantu's tortious interference until May 2007. The jury was asked by what date Guerra should have, in the exercise of reasonable diligence, discovered Cantu's interference with the contract, and it responded, "May 1, 2007." On appeal, Cantu argues the evidence is insufficient to support this finding and he relies on a judicial admission by Guerra in its first supplemental plea in intervention in which it stated: "Exercising reasonable diligence, [Guerra] only learned of facts which would place [it] on notice of accrual of the slander and tortious interference . . . causes of action in *December 2006*." [Emphasis added.]

Facts alleged or admitted in a party's live pleadings are accepted as true by the court and jury and are binding on the pleader. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983). However, a party relying on his opponent's pleadings as a judicial admission of fact, must protect his record by objecting to the introduction of evidence contrary to that admission of fact and by objecting to the submission of any issue bearing on the fact admitted. *Id.* Failure to object waives a party's right to rely on the admission. *See id.* at 768. At trial, Carlos Guerra, one of Guerra's name

partners, was asked when he first learned that "something might be amiss" and he answered as follows:

> A.      Well, the first time that we found out that Mark Cantu had gone to the clients and, in fact, dictated that letter and – and had Zac sign it and send it to us was in May of, I believe, 2000 – well, I can't recall the year. Was it last year?
>
> Q.      '07?
>
> A.      I believe so. Yes. It was May of last year. We found out that Mr. Cantu had gone over there and – and badmouthed me.
>
> [Cantu's attorney]: Excuse me, Your honor. . . . That's outside the pleadings. His comment.
>
> [Trial court]: Objection overruled.

On appeal, Cantu does not assert the trial court erred in overruling his objection. Because the witness's admitted testimony contradicted the statement contained in Guerra's first supplemental plea in intervention, the jury was not obligated to accept the statement in the pleading as true.[2]

Cantu also challenges the sufficiency of the evidence by asserting Guerra was aware of Cantu's involvement in the Gonzalez family's lawsuit in February 2005, which is when Zacarias sent his termination letter to Guerra. Therefore, Cantu argues that because Guerra knew about his involvement more than two years before Guerra added Cantu to its May 2007 amended plea in intervention, the discovery rule does not apply as a matter of law. Although Cantu argues February 2005 is the dispositive date, the jury determined Guerra discovered Cantu's interference on May 1, 2007. Accordingly, we must address whether the evidence is factually sufficient to support this

---

[2]   Moreover, even if the jury was bound by the admission that "[Guerra] only learned of facts which would place [it] on notice of accrual of the slander and tortious interference . . . causes of action in December 2006," Guerra added Cantu to the suit within two years of December 2006 when it filed its supplemental plea in intervention on May 14, 2007. *See Trinity River Auth. v. URS Consultants, Inc.-Tx.*, 889 S.W.2d 259, 262 (Tex. 1994) (stating general rule that a cause of action accrues as soon as defendant's wrongful act effects some injury; however, under discovery rule, cause of action is deemed not to accrue until the injury becomes discoverable).

finding. In a hand-written letter dated February 23, 2005, Zacarias Gonzalez informed Guerra he no longer wanted Guerra to represent him, stating, "I have never met you all and asked [sic] that you not bother me or call me or I will go to the State bar and report you." Carlos Guerra testified he assumed the family was still "very much hurting from what had happened," and they did not want to "do anything." Except to return the files to the family, Carlos said he did not contact the family after receiving the letter because the letter asked that he not do so. In May 2007, after the Gonzalez family retained RG&B, Carlos Guerra told Glenn Romero he wanted to speak with the family to find out more information about why they had terminated Guerra's representation. A meeting was arranged at Guerra's offices, and Carlos Guerra testified it was at this time that he learned Cantu had "badmouthed him." Zacarias testified that, at the meeting, he explained how Cantu "took over the case." Michael Moore, another of Guerra's name partners, testified he did not know "anything was amiss" when his firm received the termination letter, and he assumed the Gonzalez family was not interested in pursuing the litigation. Moore agreed with Carlos that they could not contact the family based on the request not to do so. Moore said he learned about Cantu's "bad acts" for the first time at the May 2007 meeting, at which time it became apparent the family's "decision to terminate [Guerra] was not the result of – of grief, but it was the result of an influence by [Cantu]." We conclude the evidence is factually sufficient to support the jury's finding that Guerra discovered Cantu's interference on May 1, 2007; therefore, Guerra's tortious interference claims are not time-barred.

# TORTIOUS INTERFERENCE WITH A PROSPECTIVE CONTRACT[3]

The jury found that Cantu "intentionally interfered with a reasonable probability that Guerra & Moore, Ltd., LLP would have entered into a contractual relationship with Julian Gonzalez [father of Santa Magdalena and Zacarias] by committing an unlawful act that was a substantial factor in preventing the relationship from occurring." In his second issue, Cantu asserts the evidence is factually insufficient to support this finding. More specifically, Cantu argues the evidence is insufficient to support any finding that Julian Gonzalez would have signed a contract with Guerra. One of the elements of a claim for tortious interference with a prospective contract is that there must be a "reasonable probability" that the plaintiff would have entered into the prospective relationship or contract. *Johnson v. Baylor Univ.,* 188 S.W.3d 296, 304 (Tex. App.—Waco 2006, pet denied). Because that is the only element specifically challenged on appeal, we do not consider the sufficiency of the evidence on the other elements of the claim. To establish this element, Guerra had to prove that more than mere negotiations occurred. *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). "Though it is not necessary to prove that the contract would have certainly been made but for the interference, that result must have been reasonably probable, considering all of the facts and circumstances attendant to the transaction." *Id.* at 475-76.

Zacarias testified he was the one who hired the lawyer for the family and his father did not intend to retain a different lawyer. Zacarias said he had no plans to dismiss Guerra until the day Cantu appeared, uninvited, at his home and told Zacarias he could do a better job than Guerra. Zacarias said that, but for Cantu's involvement, he would have continued to retain Guerra. Julian

---

[3] On appeal, Cantu does not challenge the jury's finding that he interfered with Guerra's contract with Zacarias.

Gonzalez testified that after the death of his daughter and the injuries to his son he was upset and depressed, and he did not "even think about" hiring or looking for another lawyer. When asked whether he wanted a lawyer different from whomever Zacarias hired, Julian responded, "Whatever lawyer Zac got" and he "just went along with Zac." We conclude that Julian's testimony that he left the decision about who to retain to Zacarias, coupled with Zacarias' testimony that he retained Guerra and would have continued to do so, was sufficient evidence to support the jury's implied finding that there was a "reasonable probability" that Julian would have entered into a contract with Guerra.

## EXCLUSION OF EVIDENCE

At trial, Cantu attempted to introduce into evidence a letter from Guerra to Zacarias, which Guerra sent when it returned the case files to Zacarias after he terminated Guerra's representation. The trial court sustained objections to the letter, and, on appeal, Cantu asserts this ruling amounted to an abuse of discretion because the letter was relevant to show Guerra repudiated the contract with the Gonzalez family.

Zacarias terminated his representation with Guerra on February 23, 2005. On that same date, he and Julian each signed a representation agreement with Cantu. At trial, Cantu sought to admit a letter dated February 24, 2005 from Guerra to Zacarias, which stated as follows:

> Dear Mr. Gonzalez, [sic] in response to your letter dated February 23rd, 2005, please be advised that we have closed our file. You may have a valid case or need to protect viable legal rights and remedies. Accordingly, we suggest that you contact another law firm or the Lawyer's Referral Service in order to obtain another lawyer as soon as possible, if you desire to pursue this matter.

. . .

> *This letter confirms the fact that we have not advised you to take any specific actions concerning your legal matter. We have not advised you that you settle your legal matter and we have not acted as your attorneys in any way. . . . .*

[Emphasis added.]

At trial, Cantu argued the emphasized language was relevant to the issue of the damages sought by Guerra and to whether Guerra "repudiated" the existence of any contract with the Gonzalez family. On appeal, Cantu contends the trial court's error in excluding the letter harmed him because the letter contradicts any allegation that he tortiously interfered with either an existing contract with Zacarias or a prospective contract with Julian. We disagree.

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). Here, Zacarias signed a Contingent Fee Contract with Guerra, and then terminated the representation less than one month later. Guerra's letter does nothing more that confirm that, in the short period of time of representation, the Guerra firm did not advise Zacarias "to take any specific actions concerning [his] legal matter," did "not advise[] [Zacarias to] settle [the] legal matter," and did "not act[] as [Zacarias's] attorneys in any way." We, therefore, conclude the letter is not relevant to show repudiation by Guerra of the Contingent Fee Contract. Accordingly, the trial court did not err in denying admission of the letter into evidence.

**RESCISSION**

After closing arguments, RG&B moved for a directed verdict on their "counterclaim for rescission" of the April 25, 2007 agreed order regarding the division of attorney's fees.[4] On appeal, Cantu argues the trial court erred in granting the directed verdict. We agree.

Rescission is an equitable remedy that extinguishes legally valid contracts that must be set aside because of fraud, mistake, or other reasons in order to avoid unjust enrichment. *Martin v. Cadle Co.,* 133 S.W.3d 897, 903 (Tex. App.—Dallas 2004, pet. denied). Because rescission is a remedy and not an independent cause of action, RG&B had to first establish its right to a directed verdict on one or more of its claims against Cantu. A directed verdict is proper when: (1) the opponent's pleadings are insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Rudolph v. ABC Pest Control, Inc.*, 763 S.W.2d 930, 932 (Tex. App.—San Antonio 1989, writ denied).

In its countersuit against Cantu, RG&B alleged claims for breach of contract and fraud. At trial, RG&B did not specifically request a directed verdict on these claims; instead, it argued it was entitled to rescission of the April 25, 2007 agreed order on the grounds that Cantu had breached the underlying settlement agreement. Because RG&B did not move for a directed verdict on its fraud claims, we narrow our review to whether RG&B was entitled to a directed verdict on its breach of contract claim.

---

[4] The parties do not cite to a settlement agreement and the record on appeal does not contain one. Therefore, our disposition of this issue rests on the language contained in the agreed order. "An agreed judgment has the same effect as any court judgment." *Gulf Ins. Co. v. Burns Motor, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000). "An agreed judgment should be construed in the same manner as a contract." *Id.*

Where an agreement can be given a definite legal meaning or interpretation, it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). An agreement is ambiguous only if it is reasonably susceptible to more than one interpretation. *Id.* Whether an agreement is ambiguous is a question of law for the court to decide by looking at the agreement as a whole in light of the circumstances present when the agreement was entered. *Id.* at 394. When an agreement contains an ambiguity, the granting of a directed verdict is improper because the interpretation of the instrument becomes a fact issue. *See Coker,* 650 S.W.2d at 394 (granting motion for summary judgment improper where ambiguity exists); *see also Stinger v. Stewart & Stevenson Servs., Inc.*, 830 S.W.2d 715, 721 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (Draughn, J., dissenting) (granting directed verdict improper where ambiguity exists).

RG&B argued it was entitled to rescission of the settlement agreement because Cantu breached the settlement agreement by pursuing his claims for breach of fiduciary duty and fraud against RG&B. According to RG&B, the settlement agreement required all parties to release their respective claims. Cantu argues the agreement called only for RG&B to release its claims against him and the agreement did not require him to release any claims he might have against RG&B. With regard to any claims one party had, or may have, against another, the agreed order states as follows: "It is therefore ordered that law firm [RG&B] will drop any and all Interventions currently pending against Mark A. Cantu and/or his law firm with prejudice as soon as possible." No similar language was addressed to any claims by Cantu against RG&B.

For the trial court to have granted RG&B a directed verdict on its breach of contract claim, the court was required to find either that the agreed order *unambiguously* required Cantu to drop any

claims he had against RG&B, or that the agreed order contained an ambiguity on the parties' intentions and the evidence established the parties *intended* that all respective claims be dropped. Because the directed verdict was granted partially on issues of law, we must review the trial court's decision on those issues for legal correctness. *Cf. Callaway v. Overholt*, 796 S.W.2d 828, 831-33 (Tex. App.—Austin 1990, writ denied)(in directed verdict case, trial court's interpretation of unambiguous contract provision upheld as a matter of law).

The agreed order contains no language directing Cantu to take, or not take, any action. Therefore, we cannot conclude the agreed order unambiguously required Cantu to drop any claims he had against RG&B. If the trial court's directed verdict was based on its determination that the agreed order contained an ambiguity, a directed verdict was improper because the interpretation of the parties' settlement agreement became a fact issue for the jury to decide. Therefore, the directed verdict in favor of RG&B was improperly granted and must be reversed.

## MOTION TO RECUSE

About three months before trial commenced, Cantu filed a motion to recuse Judge Vasquez, which was denied by Judge David Peeples. On appeal, Cantu asserts Judge Peeples erred in denying his motion. An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Cantu's record citations in his appellate brief are to the transcript of the trial on the merits and not to the transcript of the recusal hearing. Also, an appellant bears the burden to present an appellate court with a sufficient record showing reversible error. TEX. R. APP. P. 35.3(b). The record on appeal does not contain a transcript of the recusal hearing. By failing to bring forth a sufficient record to show reversible error, Cantu has waived any right to complain of the alleged error on appeal. *See*

*Worthy v. Collagen Corp.*, 921 S.W.2d 711, 713 (Tex. App.—Dallas 1995) (holding same), *aff'd*, 967 S.W.2d 360 (Tex. 1998). Even if he had not waived this issue, and even assuming Judge Peeples erred in denying Cantu's motion to recuse Judge Vasquez, Cantu has not shown he was harmed. Judge Ender presided over the trial, granted the directed verdict in favor of RG&B, and awarded sanctions against Cantu. Judge Vasquez only presided over closing arguments and jury deliberations, he signed the final judgment after the jury returned its verdict against Cantu, and he signed the order denying Cantu's motion for new trial. Because Judge Ender presided over the trial on the merits, Cantu cannot show harm on this record.

## SANCTIONS

In his final issue, Cantu asserts the trial court erred in sanctioning him in the amount of $10,000 in favor of Guerra and $10,000 in favor of RG&B. On April 29, 2008, RG&B and Guerra moved for monetary sanctions based on Cantu's repeated violations of the court's rulings on a motion in limine. The trial court held the request for sanctions in abeyance pending the end of trial. On April 30, 2008, RG&B moved for death penalty sanctions, again based on Cantu's conduct. Again, the court ruled to hold the request in abeyance. On May 1, 2008, RG&B and Guerra again asked that Cantu be sanctioned. This time the court granted the motions for sanctions, finding "a repeated course of conduct extremely egregious in its nature, apparently designed to occasion a mistrial" and actions "intentionally disrespectful and [which] appear to be in bad faith . . . ." The court concluded that, despite repeatedly admonishing Cantu, "no amount of caution to the attorneys for [Cantu], or Mark Cantu himself, who has been acting as co-counsel, has had any effect." The court awarded RG&B and Guerra each $10,000, but denied the request for death penalty sanctions.

Our review of the record reveals the trial court did not abuse its discretion in sanctioning Cantu. He repeatedly violated the limine order, as well as other rulings by the trial court, and he was repeatedly admonished by the court. Also, Cantu's argument on appeal that certain matters that were the subject of the motion in limine should not have been excluded lacks merit. "Attorneys may not violate a court order even though they may believe the order is incorrect." *Vulcan Materials Co. v. Bowers*, No. 04-04-00062-CV, 2004 WL 2997852, *3 (Tex. App.—San Antonio Dec. 29, 2004, pet. denied) (not designated for publication) (proper remedy is to appeal, "not to ignore a court's legitimate exercise of its authority to rule on evidentiary matters").

## CONCLUSION

We reverse the directed verdict in favor of RG&B and remand RG&B's claims against Cantu for further proceedings. The trial court's judgment ordered that "[a]ll costs spent or incurred in this cause are adjudged against" Cantu. Because we reverse the directed verdict in favor of RG&B, such an award of costs may no longer be equitable and just. Therefore, we remand the award of costs against Cantu for reconsideration in light of our disposition on appeal. We affirm the trial court's judgment in all other respects.

Sandee Bryan Marion, Justice