# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-12-00565-CV

_____

## CHARLES POPENEY AND FT. BEND NEUROLOGY, P.A., Appellants

## V.

## RACHEL CAUSEY AND BILL CAUSEY, Appellees

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 10-06-06191**

## MEMORANDUM OPINION

Dr. Charles Popeney and Ft. Bend Neurology, P.A. appeal the trial court's order denying their motion to dismiss the Causeys' health care liability claims pursuant to section 74.351 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011). Because we find the trial court did not abuse its discretion in denying appellants' motion to dismiss, we affirm the order of the trial court.

1

# I.   BACKGROUND

In May 2009, Dr. Rosalia Burke performed a right superficial parotidectomy[1] on Rachel Causey at Memorial Hermann Hospital–The Woodlands. To assist in locating Rachel's facial nerve, Dr. Burke utilized intraoperative neurophysiological monitoring (IONM). Intra-Op Monitoring Services, LLC ("Intra-Op") provided the IONM equipment. The IONM equipment allows real-time mapping of areas with nerve branches by the placement of monitoring electrodes (which provide electroconductive feedback) on a patient's cranial nerves so the surgeon may avoid damaging the nerves during surgery. Intra-Op also provided the technologist, Justin Hawkins, who was present during the surgery. Dr. Charles Popeney, a neurologist specializing in intraoperative neurophysiological monitoring, and owner of Ft. Bend Neurology, P.A., assisted by monitoring the readings from the IONM equipment from a remote location. During the procedure, Rachel's facial nerve was inadvertently transected.

The Causeys filed a report authored by Dr. Jaime Lopez to comply with the statutory requirements that apply to health care liability claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. Dr. Popeney and Ft. Bend Neurology filed

---

[1] A parotidectomy is the "surgical removal of the parotid gland[.]" *Webster's Third New International Dictionary* 1644 (2002). The parotid gland is "either of a pair of salivary glands situated on the side of the face below and in front of the ear[.]" *Id.*

objections to the sufficiency of the expert report. The trial court overruled the objections and denied the motion to dismiss. Popeney and Ft. Bend Neurology appealed the trial court's ruling. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2012). In the prior appeal, we concluded that Dr. Lopez's report failed to provide a fair summary that explained how Dr. Popeney's or Ft. Bend Neurology's alleged failures to meet the applicable standards of care caused Rachel's injury. *See Popeney v. Causey*, No. 09-11-00649-CV, 2012 WL 2849274, at *1 (Tex. App.—Beaumont July 12, 2012, no pet.) (mem. op.). We reversed the trial court's order denying Dr. Popeney's and Ft. Bend Neurology's motion to dismiss and remanded the case to the trial court to consider the Causeys' request for additional time to cure the deficiencies. *Id.* at *4.

The trial court granted Dr. Popeney's request for an extension of time and Dr. Lopez filed a supplemental report. Dr. Popeney objected to the sufficiency of the supplemental report and moved to dismiss. The trial court overruled the objections and denied the motion to dismiss. This interlocutory appeal followed. On appeal, Dr. Popeney and Ft. Bend Neurology argue that Dr. Lopez's supplemental report is conclusory as to its summary of causation and relies on conflicting standards of care. Finding no abuse of discretion by the trial court in denying appellants' motion to dismiss, we affirm the order of the trial court.

3

## II.     APPLICABLE LAW

We review a trial court's denial of a motion to dismiss under section 74.351 of the Civil Practice and Remedies Code for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

A plaintiff who asserts a health care liability claim, as defined by the statute, must provide each defendant physician or health care provider with an expert report which provides "a fair summary of the expert's opinions" as of the date of the report regarding the applicable standards of care, the manner in which the care rendered failed to meet the applicable standards, and the causal relationship between that failure and the claimed injury. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6). When a plaintiff timely files an expert report and a defendant moves to dismiss on the basis that the report is insufficient, the trial court must grant the motion only if the report does not represent a good faith effort to meet the statutory requirements. *Id*. § 74.351(*l*). To constitute a good faith effort, a report

4

"must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875.

"A report cannot merely state the expert's conclusions about these elements[]" but "'must explain the basis of [the] statements to link [the] conclusions to the facts.'" *Bowie*, 79 S.W.3d at 52 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)); *see also Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010). A report that merely states the expert's conclusions about the standard of care, breach, and causation is deficient. *Palacios*, 46 S.W.3d at 879. Further, a report that omits any of the statutory elements is likewise deficient. *Id.* Regarding claims of vicarious liability, an expert report is sufficient when it "adequately implicates the actions of that party's agents or employees[.]" *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008). In determining whether the trial court's ruling on the motion to dismiss was correct, we look to the four corners of the report. *Palacios*, 46 S.W.3d at 878. "The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* at 879.

5

III.  ANALYSIS

In our prior opinion, we concluded that Dr. Lopez's initial report was insufficient because we were unable to determine from the report whether Dr. Popeney was responsible for monitoring the IONM equipment during the entire procedure or only a portion of the procedure, and whether Dr. Popeney was contacted before or after Rachel's facial nerve was cut.  Further, the report failed to identify the point during surgery that the facial nerve was cut, and what information should have been provided to Dr. Burke to allow her to avoid cutting the nerve.  *Popeney*, 2012 WL 2849274, at *3.  Dr. Lopez's supplemental report answers these questions and provides a fair summary of the standards of care, breach, and causation.  *See Palacios*, 46 S.W.3d at 875.

In his supplemental report, Dr. Lopez explained that Dr. Popeney had a duty to perform a preoperative review of the IONM protocol and review the baseline IONM data with the technologist Hawkins and Dr. Burke, as well as a duty to contemporaneously "[r]eview and confirm the IONM data and stimulation results" with Hawkins and Dr. Burke, and a general duty to supervise Hawkins throughout the case.  Based on his review of the events of the surgery, Dr. Burke's post-operative report, Dr. Burke's affidavit, as well as a communications log and chat log that recorded communications between Hawkins and Dr. Popeney during

6

surgery, Dr. Lopez concluded that Dr. Popeney breached the applicable standards of care in several respects.

Dr. Lopez stated that surgery began at 1:25 p.m. but Dr. Popeney did not begin monitoring until 2:18 p.m., leaving "a period of 53 minutes at the beginning of the case that was not contemporaneously monitored . . . and [Hawkins] was not supervised." Dr. Lopez further stated that there is nothing in the record to indicate that Dr. Popeney supervised Hawkins during the setup of the case or during the acquisition of the baseline IONM data. Additionally, Dr. Lopez asserted that based on the records, Dr. Popeney "was not in communication" with Hawkins between 2:36 p.m. and 3:15 p.m., the period during which structures were being stimulated to verify the nerve position and the facial nerve was inadvertently cut. Dr. Lopez concluded generally that Dr. Popeney failed to review and confirm the IONM data and stimulation results in a contemporaneous manner. Dr. Lopez asserted that these omissions breached the applicable standards of care.

Dr. Lopez explained in his supplemental report that Dr. Popeney's "failure to communicate the accurate and relevant IONM findings to the surgeon led [Hawkins] to misinterpret and provide erroneous information to Dr. Burke." In his supplemental report Dr. Lopez stated:

> [A]s a result of Dr. Popeney['s] lack of contemporaneous review of the data and supervision of [Hawkins], Dr. Burke was led to believe

that the structure she was stimulating was indeed the facial nerve. Being told that stimulation of the structure in the surgical field generated activity in all branches of the facial nerve would indicate that the structure was indeed the facial nerve. . . . This erroneous and false identification of the facial nerve within reasonable medical probability contributed to the transection of the facial nerve, since the IONM nerve stimulation results conveyed to Dr. Burke indicated she had identified the facial nerve and, thus, the other structures in the surgical field could be treated as non-nerve[.]

Dr. Lopez concluded that "Dr. Popeney should have monitored the case, and reviewed and analyzed the data contemporaneously." Dr. Lopez opined that "[t]his would have prevented Mr. Hawkins from providing his own incorrect interpretation of the IONM data. [Because] Dr. Popeney would have correctly informed Dr. Burke that the 'responses' which had been seen were actually artifacts and not true EMG (muscle) responses[.]" Dr. Lopez explained that "[k]nowing this, Dr. Burke would have stimulated other structures in an attempt to identify the facial nerve, prior to cutting unknown structures."

Dr. Lopez adequately set forth the applicable standards of care in the supplemental report and explained how they were allegedly breached by Dr. Popeney. Dr. Lopez's explanation of how and why Dr. Popeney's breach of the standards of care may have caused or contributed to Dr. Burke inadvertently cutting the facial nerve provides a sufficient basis for the trial court's determination that the Causeys filed a compliant report. *See Jelinek*, 328 S.W.3d

8

at 539-40; *Palacios*, 46 S.W.3d at 879.  We conclude the trial court did not abuse its discretion in denying appellants' motion to dismiss.  We affirm the order of the trial court.

      AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on February 5, 2013
Opinion Delivered April 25, 2013

Before McKeithen, C.J., Kreger and Horton, JJ.