**Opinion issued May 8, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-01015-CV

_____

**MILLARD INTEREST, INC., Appellant**

**V.**

**J&A LEISURE, LTD, D/B/A MASSAGE ENVY-MEYERLAND, CJ'S PLACE, LLC, JERALD HENRY AND ANGELA HENRY, Appellees**

---

On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Case No. 994127

---

## MEMORANDUM OPINION

At the conclusion of a bench trial, Millard obtained a money judgment against an entity with which Millard contracted to buy business assets and assume a commercial lease. Millard appeals the trial court's grant of a directed verdict in favor of Jerald and Angela Henry—who own the entity against whom judgment

was entered—on the issue of their individual liability. In one issue, Millard argues that the Henrys signed the contract in their individual capacity, causing the directed verdict in their favor to be erroneous and making them legally obligated to pay the judgment. The Henrys contend that they signed the contract in their representative capacity only, which would shield them from individual liability for the judgment entered.

We reverse.

## Background

Millard purchased the assets of a Massage Envy franchise from J&A Leisure, Ltd. through execution of an Asset Purchase Agreement. The contract's introductory paragraph identifies the parties as follows:

> This Asset Purchase Agreement (this "Agreement") dated as of the date last written below by and between J & A Leisure, Ltd. d/b/a/ Massage Envy–Meyerland, a Texas limited partnership, in Harris County, Texas (the "Seller"), CJ'S Place, LLC (the "General Partner"), Jerald Henry and Angela Henry, (the "Limited Partners"), and Millard Interests, Inc., a Texas corporation, in Harris County, Texas (the "Purchaser").

Representations and warranties regarding the condition of the Massage Envy location's tangible assets, building and leased space, are contained in section 5 of the contract, which begins with the following language:

> 5. <u>Representations and Warranties by Seller.</u> The Seller, General Partner and the Limited Partners, jointly and severally, represent and warrant to the Purchaser that . . .

2

Subsections (l) and (m) warrant that these items are "in good condition of maintenance and repair, ordinary wear and tear excepted."

The final page of the contract contains signature blocks for all parties:

SELLER:

J & A LEISURE, LTD. D/B/A MASSAGE ENVY – MEYERLAND

By:     CJ'S PLACE, LLC, its general partner

_____

Angela Henry, _____

_____

Jerald Henry, _____

GENERAL PARTNER

CJ'S PLACE, LLC

_____

Angela Henry, _____

LIMITED PARTNERS

_____

Jerald Henry

_____

Angela Henry

PURCHASER:

MILLARD INTERESTS, INC.

_____

David R. Millard, III, President

3

During the bench trial, the Henrys moved for a directed verdict on the limited issue of individual liability; the trial court requested briefing from both parties. Millard's brief argued that "the Henrys, as limited partners, jointly and severally warranted the condition of the assets and premises" which "contractually changed the default liability scheme" making them "jointly and severally liable when they otherwise would not have been under Texas statute." The trial court took the matter under advisement.

At the conclusion of the trial, the trial court found that J&A Leisure breached the contract by "failing to transfer certain real and tangible assets in good condition" and awarded Millard damages, costs, and attorney's fees. The trial court also granted the Henrys a directed verdict on individual liability, thereby preventing Millard from collecting from the Henrys money to satisfy its judgment against J&A Leisure. Millard appeals.

**Standard of review**

A court may instruct a verdict if there is no fact issue on a material question that would prevent a decision as a matter of law. *See Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). A defendant may obtain a directed verdict if the plaintiff fails to present evidence raising a fact issue essential to the plaintiff's claim or if the evidence conclusively establishes a defense to the plaintiff's cause of action, for example an affirmative defense. *Id.* at 77–78

4

(permitting directed verdict on affirmative defense of justification); *Cantu v. Guerra & Moore, Ltd.*, 328 S.W.3d 1, 8–9 (Tex. App.—San Antonio 2009, no pet.) (analyzing directed verdict on contract claim). We review the grant of a directed verdict for legal sufficiency, determining whether there is any conflicting evidence of probative value that raises a fact issue and, as a result, prevents judgment as a matter of law. *Gomer v. Davis*, 419 S.W.3d 470, 475 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

A directed verdict on the affirmative defense of lack of capacity is proper in this circumstance only if the contract is unambiguous, clearly evidencing signatures in a representative capacity only. TEX. R. CIV. P. 94 (concerning affirmative defenses); *Polland & Cook v. Lehmann*, 832 S.W.2d 729, 740 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (stating that burden to establish that party was sued in wrong capacity was on party claiming lack of capacity); *Prudential Ins. Co. of Am.*, 29 S.W.3d at 77–78 (holding that directed verdict is proper if defense is established as matter of law).

If the contract can be given a single, definite legal meaning, it is not ambiguous and can be construed as a matter of law. *Cantu*, 328 S.W.3d at 8 (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)); *TX C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*, 233 S.W.3d 562, 567 (Tex. App.—Dallas 2007, pet. denied). If, on the other hand, it is unclear whether the signors accepted legal

5

obligations solely in their limited capacity, then the contract is not susceptible to a single, definitive meaning, and judgment as a matter of law is erroneous. *See Appleton v. Appleton*, 76 S.W.3d 78, 84–85 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (stating that interpretation of ambiguous contract is issue for trier of fact and cannot be decided as matter of law). Yet, a "simple lack of clarity" is not enough to create an ambiguity. *See DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

We review the trial court's interpretation of the contract de novo. *TX C.C., Inc.*, 233 S.W.3d at 567. In doing so, we review the entire contract to determine its meaning; no single provision is analyzed in isolation. *Appleton*, 76 S.W.3d at 84 (stating that "courts should examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions"); *Standard Constructors, Inc. v. Chevron Chem. Co., Inc.*, 101 S.W.3d 619, 622 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

### The parties' arguments

According to Millard, the repeated use of the term "Limited Partners" throughout the agreement was not a designation of legal capacity but, instead, simply a descriptive phrase or definition used to refer to the Henrys. Thus, just as the Asset Purchase Agreement was to be referred to throughout as "the Agreement," the Henrys were going to be referred to as "the Limited Partners."

Under Millard's theory, the term "Limited Partners" had no more of a legal effect than choosing any other descriptive phrase, such as "the Henrys." *See Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 657 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (discussing concept of *descriptio personae* in which specification of corporate office can be treated as only descriptive and not as indication of capacity).

The Henrys counter that the use of the term "Limited Partners" demonstrates that they signed the contract in their representative, and not individual, capacities. According to the Henrys, if "the parties intended . . . to make representations in their individual capacities, the [c]ontract could have done so by naming them individually" and including language explicitly stating "'individual' or 'personal' capacity."

### The contract

If the contract is capable of only one reasonable meaning, we must conclude that the contract is unambiguous and enforce it as written. *Appleton*, 76 S.W.3d at 84. There are multiple provisions in the contract that can be assigned no other reasonable meaning than that the Henrys were acting in their individual capacities when they became parties to the agreement and signed it. For example, section 13 concerns indemnification by the "Seller, General Partner and the Limited Partners" and states that each will "jointly and severally indemnify" Millard for losses that

result from "breach of any representations, warranty, covenant or other agreement of any of the Seller, General Partner or any of the Limited Partners contained in this agreement."

Joint and several liability will not exist against a limited partner acting in a limited capacity. TEX. BUS. ORGS. CODE ANN. § 153.153 (West 2006) (setting forth rule that holding position of both general and limited partner affords partner protection from liability to extent of his participation as limited partner). Section 13 would be superfluous if we were to accept the Henry's contention that they were agreeing to indemnify only to the extent of their limited exposure as limited partners because the section would not have altered the background business organization rule that a seller and general partner are jointly liable while a limited partner is not. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("Courts must favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless.") This provision strongly favors a conclusion that the Henrys were contracting to be jointly and severally liable in their individual capacities, along with the parent company.

Similarly, Section 1(e) uses the phrase "Limited Partners" to describe the Henrys individually. That provision states that the "Limited Partners are currently guarantors of the Lease" and requires Millard to "hold Limited Partners harmless

8

from and against any claims asserted against or losses sustained by Limited Partners arising out of any claims made by the landlord under the lease against Limited Partners under their guaranty of the Lease." To secure this indemnification, David R. Millard, III, was required to "execute and deliver to Limited Partners a security interest in a stock brokerage account pursuant to the terms of a Security Agreement . . . ."

This section uses the term "Limited Partners" when discussing an individual action by the Henrys (their guarantee of the Massage Envy lease) and establishes protection for the Henrys individually through indemnification against any future landlord claims against them. A guaranty normally is executed by individuals to ensure payment by a corporate entity; a guaranty by limited partners solely in their representative capacity would not create any additional protection for a landlord or lender. *Cf. Gotcher v. Lamar State Bank*, 714 S.W.2d 365, 367 (Tex. App.—Beaumont 1986, writ ref'd n.r.e.) (involving limited partner who executed personal guaranty and noting that personal guaranty created joint and several liability where none would have existed). Nor would it require separate indemnification following the transfer of the lease. Like section 13, this section 1(e) supports the conclusion that the Henrys were acting individually through execution of this contract.

Section 20's non-competition clause also supports the conclusion that the term Limited Partners was merely a descriptive definition. It states that "none of

9

the Seller, General Partner or Limited Partners shall, directly or indirectly, engage, or be interested in" a Massage Envy or other, similar business in the same county. It goes on to state that "a person shall be deemed to be directly or indirectly interested in a business, activity or entity if he or she . . . [is a] stockholder, director, officer, employee, sales representative, agent, partner, individual proprietor, lender, consultant or otherwise . . . ."

The only reasonable interpretation of this provision is that the Henrys—who owned and operated the business Millard was purchasing—were agreeing that they, as individuals, would not compete against Millard in the future. It would be unreasonable to conclude that the parties intended the non-compete to be enforceable only to the extent of the Henrys' limited partner status. Doing so would permit the Henrys (the former franchisees) to start a new business and compete with the franchise location they just sold. *Coker*, 650 S.W.2d at 394 ("Such an interpretation would render the provisions . . . surplusage. Courts must favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless.")

Finally, section 7(e) requires that "Angela Henry" be available to consult with Millard and "assist in the transition of ownership of the Subject Business" on a set schedule for 45 days from the date of the contract. There was not an additional signature block for Angela Henry to sign to create a contractual

obligation to consult. The reasonable conclusion is that her signature under the heading "Limited Partners" was intended to bind her individually.

These provisions clearly contemplate personal obligations and warranties by the Henrys; yet, none would be enforceable without signing the contract in their individual capacities. The Henrys' argument that they signed solely in their representative capacity would require us to negate these provisions, which we will not do. *See Coker*, 650 S.W.2d at 394 (holding that no reasonable interpretation should render a provision meaningless).

The Henrys additionally argue that the structure of the signature blocks creates an inference in their favor because an "agent who signs below the principal's name creates an inference that he is signing in a representative capacity." Any inference in their favor is negated by the repeated, unambiguous terms of the contract creating individual obligations and personal indemnification. Besides, the signature block does not follow the commonly accepted form for representative capacity, which is

NAME OF ENTITY
By: _____
Name of individual, Capacity/Office.

*See, e.g., Morrow v. LaRue*, 544 S.W.2d 842, 844 (Tex. App.—Dallas 1976, no writ) (stating that signature block containing these elements makes it apparent "on its face" that signor was acting in representative capacity). Instead, the same

11

descriptive phrase used in the introductory paragraph is listed above the Henrys' names without "By:" or any descriptive phrase or title in place of the "Capacity/Office" seen above. The signature block in the Henrys' contract indicates individual capacity as much as it signals representative capacity. There is no inference in their favor based on the structure of this signature block.

Finally, the Henrys argue that their signatures were necessary because the contract contained a provision affirming that the Seller's partners and the General Partnership's Members were authorizing the contract. But it was not necessary for the Henrys to sign the agreement in order to demonstrate their agreement; they could have signed a separate certification or made a statement about their authority in an acknowledgment. Moreover, as a practical matter, a separate consent or acknowledgment was unnecessary in this situation because the corporate signatories were closely-held entities owned, directly or indirectly, by the Henrys and, therefore, they had authority to act on behalf of those entities even without signing as "Limited Partners."

We hold that our review of the entire contract—giving legal effect to all provisions and disregarding none of them—leads to the single reasonable conclusion that the Henrys signed the contract in their individual capacity. Accordingly, we reverse the trial court's grant of a directed verdict on the issue of individual liability and render judgment in Millard's favor consistent with the

damages calculation already made by the trial court in connection with the judgment previously entered against J&A Leisure.

## Conclusion

We reverse the grant of a directed verdict for the Henrys, remand to the trial court to determine appropriate pre- and post-judgment interest, if any, owed to Millard in addition to the damages the trial court already determined were owed, and award costs to Millard as the prevailing party on appeal.


Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Justice Sharp, concurring in judgment only.